𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

ROWE AND OTHERS V. DRISGELL.

January 30, 1902.

1. MANDAMUS—*Discretion*—*Oyster Inspectors.*—The duty imposed upon
an oyster inspector of determining whether a certain area is such
as under the law cannot be assigned to a tenant, or is part of the
oyster planting ground of the State, requires the consideration of
evidence, and is *quasi* judicial in its nature, and hence the manner
of its exercises cannot be controlled by *mandamus.*

Original application for a mandamus.

*Refused.*

The opinion states the case.

*Pollard & Pollard* and *Isaac Diggs*, for the petitioners.

*H. I. Lewis* and *Munford & Anderson*, for the respondent.

KEITH, P., delivered the opinion of the court.

Rowe and others filed their petition in this court, stating
that they are citizens of Virginia, residing in King and Queen
county, which constitutes Oyster District No. 14; that they ap-
plied to William H. Drisgell, Oyster Inspector of said district,
and obtained a tongman's license, as provided by law, to take
oysters from all the natural oyster beds, rocks or shoals in the
Commonwealth; that the Legislature of Virginia, by an act
passed February 29, 1892, as amended by an act approved March

2, 1894 (Acts 1893-'4, p. 605), directed "The Board of Chesapeake and Tributaries" to cause to be made a true and accurate survey of the natural oyster beds, rocks or shoals, and to file maps of the survey in the clerk's office of the county wherein the oyster beds, rocks or shoals, or the greater part of them, were located. By a subsequent portion of this act, the surveys and charts which have been transmitted to the clerks of the counties and filed in accordance with its provisions, "are made conclusive evidence in all the courts of this Commonwealth that the area embraced therein is a natural oyster bed, rock or shoal. . . . . In those counties of the Commonwealth where no survey and report are filed within three months after the completion of the survey of the natural oyster beds, rocks or shoals of the Commonwealth, it shall be construed to mean, in all the courts of the Commonwealth, that there are no natural oyster beds, rocks or shoals in said county or counties, and that all area of the Chesapeake bay and its tributaries not embraced in the survey of the natural oyster beds, rocks and shoals authorized by this act shall be construed to be, in all the courts of the Commonwealth, barren area, and disposable by the Commonwealth for the purpose of planting or propagating oysters thereon, under section 2137 of the Code of Virginia, as amended and enacted by act approved February 25th, 1892."

The survey was made, but did not include the beds, rocks and shoals in the county of King and Queen. The Legislature, upon discovery of the omission, passed on the 3d of March, 1898, an act which directed that the "county of King and Queen may, at its discretion, appoint three commissioners, whose duty it shall be to go on the natural oyster beds, rocks and shoals in York river, in the county of King and Queen, and take with them the County Surveyor, or any competent surveyor, and the Oyster Inspector of King and Queen county, and lay off and designate by metes and bounds all of said natural oyster rocks, beds, and shoals, and cause the surveyor to make an accurate

survey and plots of the same, and, when said survey and plots are made, the said commissioners shall make his report to the County Court, with said surveys and plots accompanying it: Provided, however, that nothing in this act shall permit a survey of any grounds which have been assigned to any citizen of this Commonwealth for the purpose of planting and propagating oysters, or in any manner impair any vested interest in such grounds acquired by such citizen under the laws of Virginia regulating the assignment of oyster-planting ground." Acts 1897-'8, p. 893.

Section 4 provides that the court shall direct the plots and surveys to be filed in the clerk's office of King and Queen county, and "these plots and surveys shall have the same force and virtue, and stand on the same footing, in every particular, as the geodetic survey in the various counties of the Commonwealth now has under the act to protect the oyster industry approved February 29, 1892, as amended by an act approved March 2, 1894."

After the completion of the Baylor survey, but before the passage of the act of March 3, 1898, George W. Richardson applied to the Oyster Inspector of District No. 14 to lease what the petition alleges to be natural oyster beds, rocks and shoals in York river, in said county, but what the respondent claims to be a portion of the oyster-planting grounds of the Commonwealth, which the inspector was duly authorized by law to lease; and thereupon the ground in dispute was leased to Richardson by the proper authorities, and he, according to his contention, paid all the charges in the way of rent and fees which the law required him to do. He was put in possession of the ground which had been rented to him, proceeded to stake it out, and expended $4,500 in planting upon it about 30,000 bushels of oysters, which he brought from James river.

Upon the coming in of the report made under the act of March, 1898, the petitioners claimed that the assignment to Richardson was contrary to law, it being clearly shown by the

evidence that the ground in dispute was a natural oyster bed, the assignment of which is prohibited by section 2153 of the Code, as amended by an act approved February 25, 1892 (Acts 1891-'2, p. 595); and, secondly, that Richardson never so complied with the law as to entitle him to be considered a renter from the State, having failed in two essential prerequisites, in that no notice of his application was ever posted as required by section 2137 of the Code, and that the rent was not paid in advance as required by said section; and because, if he ever was a renter, he forfeited his right to be so considered by his failure to pay his rent in advance, as required by the law, for the year ending August 31, 1889.

Upon each one of these propositions there is a conflict of testimony. The weight of evidence seems to show that respondent had complied with section 2137 of the Code, as amended; that he had paid the rent required of him in order to perfect his right, and all other charges imposed by law. Whether the area rented by him was such as under the law could not be assigned as is contended by the petitioners, or whether it was a part of the oyster-planting ground of the Commonwealth which the inspector was authorized by law to lease, is also a question of fact. It may be conceded that upon this branch of the case the weight of evidence is with the petitioners. It may be said that the evidence preponderates in favor of the view that the area assigned to Richardson was at one time considered a natural oyster bed, but the testimony is quite persuasive that it had been exhausted, or, in the language of the witnesses, depleted of its oysters. These questions required the consideration of evidence in order to determine the rights of the parties, and makes the duty imposed upon the inspector *quasi* judicial in its nature.

In addition to the testimony of witnesses, the act of March, 1894, in terms, declares that the Baylor survey "shall be conclusive evidence that the area embraced in it is a natural oyster bed, rock or shoal; and in those counties of the Commonwealth

where no survey or report is filed, it shall be construed, in all the courts of the Commonwealth, that there are no natural oyster beds, rocks and shoals in said county or counties, but that the area within the limits of such counties·is barren, and disposable by the Commonwealth for the purpose of planting or propagating oysters thereon."

In addition to all this, the act of March, 1898, expressly preserves all rights which any citizen may have acquired after the completion of the Baylor survey, and before the passage of that act, the provisions of which it is declared shall not in any manner impair any vested interest theretofore acquired under the laws regulating oyster-planting ground.

The duties required of the inspector in this case under the circumstances which we have narrated are certainly not less judicial in their nature than those disclosed in *Thurston* v. *Hudgins*, 93 Va. 780, where this court, construing in large measure the section of the Code relied upon here, and especially sections 2135 and 2137, says: "The decision turns upon the question whether the duties imposed upon an oyster inspector by the provisions of the Code above quoted are purely ministerial in their nature, or are duties necessarily calling for the exercise of judgment and discretion in their performance. If they belong to the latter class, the petitioner was not entitled to a *mandamus* upon the facts stated in his petition, and the demurrer ought to have been sustained; for it is well settled that *mandamus* will not lie to compel the performance of any act or duty necessarily calling for the exercise of judgment and discretion on the part of the official charged with its performance."

In the case before us the principle here announced applies with all its force. We have preferred to deal with the entire case as made by the petition, the answer and the depositions, which disclose very clearly that the duty required of the inspector was judicial in its nature. A further examination of the opinion in *Thurston* v. *Hudgins* makes this conclusion all the more cer-

tain.   Construing section 2137 of the Code, the court said: "It
was the duty of such inspector, when called upon by anyone who
desired to make a location or entry of oyster grounds, to ascertain
whether the location desired was such ground as under the law
could be set apart for the exclusive use of the applicant.   To
do this it would be necessary for the inspector to determine
whether the location in question contained any natural oyster
bed, rock, or shoal, whether it conflicted with the claims of ripa-
rian owners who had superior rights under the statute, or was
for any other reason not subject to location by such applicant.
This would require the examination of the premises, the investi-
gation of facts, and the forming of his judgment thereon.   It is
clear, therefore, that the duties of such inspector are not purely
ministerial, but *quasi* judicial in their nature, requiring the
exercise of judgment and discretion in their performance."

Petitioners seek to escape the force of that opinion by stating
that in that case the judgment of the inspector was that the
oyster grounds were not natural oyster beds, rocks and shoals,
whereas in the case before us the inspector was of opinion that
the two parcels in controversy were natural oyster beds, rocks
and shoals.   Whatever the opinion of the inspector may have
been as disclosed by his testimony, the fact remains that he re-
fused to the petitioners the relief which they sought, and, they
seeking from this court the extraordinary right of *mandamus*,
we are under the necessity of enquiring into, not the opinion of
the Oyster Inspector with respect to the duty required of him,
but the essential nature of that duty, and if we ascertain that a
*mandamus* is sought to compel him to perform a judicial func-
tion we are constrained to deny the writ.   Of course, we decide
nothing in this case, except that, under the circumstances dis-
closed by the record, *mandamus* is not the remedy to which the
petitioners should have resorted.

*Mandamus Refused.*