## Richmond.

Lewis and Others v. Christian, Oyster Inspector.

January 22, 1903.

1. Oyster Rocks—*Boundaries—Duty of Inspector—Discretion—Mandamus.*—Under existing statutes the limits and boundaries of the natural oyster rocks, beds, and shoals in every county are conclusively established by the survey and report required to be made under the direction and control of the Fish Commissioner. The only question which the Oyster Inspector is required to determine, in reference to these matters, is whether a particular oyster rock is natural oyster rock according to said survey and report. If so, and stakes have been placed on the natural oyster rock or beds, it is made his imperative duty to have them removed. He has no discretion in the matter, and, although he has to determine these facts, his duties are wholly ministerial, and performance thereof may be enforced by *mandamus.*

2. Mandamus—*Ministerial Duties—Ascertaining Facts.*—A duty is not less ministerial because an officer has to determine the existence of the facts which makes it necessary for him to act, and *mandamus* is the proper remedy to enforce the performance of such duty.

3. Mandamus—*Public Officers—Notice—Refusal to Act.*—Notice to a public officer to discharge a duty of a strictly public nature is not a necessary condition precedent to relief by *mandamus.* The law itself imposes the duty, and the omission to discharge it is a refusal.

Error to a judgment of the Circuit Court of Mathews county rendered September 19, 1901, on an application for a *mandamus,* wherein the plaintiffs in error were the plaintiffs, and the defendant in error was the respondent.

*Reversed.*

The opinion states the case.

*J. N. Stubbs*, for the plaintiffs in error.

*L. C. Garnett*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Mathews county refusing to grant a writ of *mandamus*. The plaintiffs in error, in their petition for the *mandamus*, allege that they are citizens of the county of Mathews; that they are interested in the oyster industry, and wish to have the natural oyster rocks, beds, and shoals preserved and protected for the benefit and use of the people of the State, and that they shall not be used, occupied, or rented by any individual; that there are three natural oyster rocks in "Gunny's Point," "Queen's Springs," and "Palace's Bar," in that county, which have been laid off and designated in the Geodetic survey; that recently, and since the end of the last oyster season, certain portions of natural oyster rocks have been staked off, and are now used for planting grounds; that the stakes have been put there in plain violation of law; that J. T. Christian, oyster inspector, should not permit the stakes to remain, but should remove them, and that if he permitted the stakes to be placed on the said grounds he had no authority to do so, and pray that he may be made a party defendant to the petition, and be required to answer and show cause, if any he can, why a writ of *mandamus* should not be awarded requiring him to remove the stakes, and that all orders necessary to that end may be made.

Upon motion of the oyster inspector, the parties occupying the grounds were made parties defendant. He thereupon demurred to the petition, assigning as grounds of demurrer, 1st, that as oyster inspector he had to use judgment and discretion in deciding whether or not the bottoms mentioned were such as,

under the law, could be set apart for the purpose of planting oysters; and, 2nd, that a *mandamus* will not lie to compel an officer to undo what he had done in the exercise of his judgment and discretion, and to do what he had already determined ought not to be done.    Upon a hearing the court sustained the demurrer and refused the writ.    The plaintiffs based their right to the writ upon the following provisions of law:

By section 2153 of the Code, as amended by an act of Assembly approved February 25, 1892 (Acts 1891-'2, p. 599), it is provided that "It shall not be lawful for any person to stake in or use for the purpose of planting oysters or shells, or for depositing oysters while making up a cargo for market, any natural oyster bed, rock or shoal, or any part thereof, nor shall any person who may have occupied and staked off such natural bed, rock or shoal, continue to occupy the same; and any person violating this provision shall be fined not less than fifty nor more than one thousand dollars for each offence.    Each inspector shall require any such person within his district to remove all stakes, watch-houses, or other obstructions from said natural beds, rocks or shoals, and if, after notice, such person refuses to remove his stakes or other obstructions, the same shall be removed by the inspector, at the cost of the offender, who shall also be fined for failure to remove such stakes, watch-houses, or other obstructions not less than ten nor more than one hundred dollars."

By an act approved February 29, 1892 (Acts 1891-'2, p. 816), entitled an act "To protect the oyster industry of the Commonwealth," it is provided:

"Be it enacted by the General Assembly of Virginia, that the Board on the Chesapeake and its Tributaries shall, as soon as possible after the passage of this act, cause to be made a true and accurate survey of the natural oyster beds, rocks and shoals of the Commonwealth, said survey to be made with reference to

fixed and permanent objects on the shore, giving courses and distances, to be described in the written report of said survey hereinafter required; and a true and accurate delineation of the same shall be made on copies of the published maps and charts of the United States coast and Geodetic survey, which said copies shall be filed in the archives of this State, in the Capitol at Richmond. And the said board shall further cause to be delineated, on a copy of the published maps and charts of the United States coast and Geodetic survey, of the largest scale, for each of the counties of the Commonwealth, in the water of which there are natural oyster beds, rocks or shoals, all the natural rocks, beds or shoals lying within the waters of each of said counties, which said maps shall be filed in the clerk's office of the County Court of the county wherein may be the grounds so delineated."

By section 2 of that act, as amended by act approved March 2, 1894 (Acts 1893-'4, p. 605), it is provided that—

"And the said Board on the Chesapeake and its Tributaries, in order to carry into execution this law, shall direct the fish commissioner, who is hereby appointed a shell-fish commissioner, whose duty it shall be to direct and control the survey herein provided for. Said commissioner shall cause to be marked and defined, as accurately as practicable, the limits and boundaries of the natural oyster rocks, beds and shoals as established by said survey; and he shall take true and accurate notes of said survey in writing and make up such an accurate report of said survey, setting forth a description of the lines, with courses and distances and a description of the land marks as may be necessary to enable the oyster inspector to find and ascertain the boundary lines and limits of said natural oyster rocks, beds and shoals, as shown by the delineation on the maps and charts provided for in section one of this act. Said report shall be completed and transmitted to the board on the completion of the said survey. The said board shall cause the same to be

published in pamphlet form, and transmit copies of the same to the clerk of the County Court of the counties where the charts have been filed, or directed to be filed, as hereinbefore provided for; the said report to be filed by the clerks of the said several counties; and the said survey and report, when so filed, shall be, and be construed to be, in all the courts of the Commonwealth, as conclusive evidence of the boundaries and limits of all the natural oyster beds, rocks and shoals lying within the waters of the counties wherein such survey and report are filed; and shall be construed to mean in all the courts that there are no natural oyster beds, rocks or shoals lying within the waters of the counties where in such report and survey are filed, other than those embraced in the survey authorized by this act; provided that the said survey and report shall not be so construed in any pending trial or proceeding in any court upon any assignment made prior to the twenty-fifth day of February, eighteen hundred and ninety-two."    .    .    .

As we construe the petition for *mandamus*, though its allegations are not as clear and distinct as they might be, it makes this case—viz., that certain portions of natural oyster beds or rocks, as ascertained under the provisions of sections 1 and 2 of the acts of February 29, 1892, and March 2, 1894, above quoted, had, since the oyster season of 1900, been staked off and are now occupied as private planting grounds, in violation of section 2153 of the Code, as amended by act of February 25, 1892. If this be true, as is admitted by the demurrer to the petition, it was clearly the duty of the oyster inspector to require the persons who had placed stakes upon the said natural oyster beds to remove them; and if they refused to do so, to have them removed at their costs.

This case is not like the cases of *Thurston* v. *Hudgins*, 93 Va. 780, 20 S. E. 966, and *Rowe* v. *Drisgell*, 100 Va. 137, 40 S. E. 609, referred to and relied upon by the defendant in error. Under the law, as it was when those cases arose, it was made the

duty of the oyster inspector, when called upon by any one who desired to make a location or entry of oyster grounds to ascertain whether the location desired was such as, under the law, could be set apart for the exclusive use of the applicant. To do this it was necessary for the inspector to determine whether the location in question contained any natural oyster bed, or rock, or shoal; whether it conflicted with the claims of the riparian owners, who had superior rights under the statute, or was for any other reason not subject to location by the applicant.

Under the present law, in a case like this, it is not made the duty of the oyster inspector to determine those questions. The only question he has to determine is whether or not the oyster rock he is dealing with is natural oyster rock, according to the survey and report required under the acts of February 29, 1892, and of March 2, 1894, and which survey and report are declared by section 2 of the act to be conclusive evidence of the boundaries and limits of all natural oyster beds, rocks and shoals lying within the waters of the county. If stakes have been placed upon natural rocks or beds, as shown and fixed by the survey and report since those acts took effect, it is made the imperative duty of the oyster inspector to have the stakes removed. He has no discretion in the matter. It is true, he has to determine the existence of those facts, but that does not make his duty any the less ministerial.

The following cases clearly establish this. In *Dawson* v. *Thurston*, 2 Henning & Munford, 132, and *Manns* v. *Givens*, 7 Leigh, 689, the question involved in each case was the refusal of the court to admit a deed to record. The statute provided that, upon proof that a deed was properly executed, the County Court should admit it to record. It was held that if the proof was sufficient to authorize it to be recorded, it was the imperative duty of the court to admit it to record, and for a refusal to do so, *mandamus* was a proper remedy. See also *Delaney* v. *Goddin*, 12 Gratt. 266; *Randolph Justices* v. *Stalnaker*, 13

Gratt. 523; and *United States Fidelity and Guaranty Co.* v. *Peebles,* 100 Va. 585, 42 S. E. 310.   In each of those cases it had to be determined whether or not the facts existed which made it the duty of the court to act.   If they did, it was held that it was its imperative duty to act, that it had no discretion in the matter, and that *mandamus* was a proper remedy to compel action.

In addition to the grounds of demurrer assigned in the Circuit Court, and which have been considered and disposed of, it is insisted that the petition was fatally defective in not averring that the inspector had notice that natural oyster rocks had been staked off, and that after such notice he failed or refused to remove the stakes.

It is unnecessary to consider whether or not this objection can be raised in this court for the first time, as it seems to be settled by the weight of authority as regards duties of a strictly public nature, incumbent upon a public officer by virtue of his office and which he is sworn to perform, demand and refusal are not necessary as a condition precedent to relief by *mandamus.* The law itself stands in the place of a demand, and the neglect or omission to perform the duty stands in the place of refusal; or, in other words, the duty makes the demand, and the omission is the refusal.   High on Extra. Leg. Rem. sec. 41; 2 Spelling on Extra. Relief, sec. 1447; *N. P. R. Co.* v. *Territory of Washington,* 142 U. S. 492, 35 L. Ed. 1092.

We are of opinion that the Circuit Court erred in sustaining the demurrer to the petition, that its judgment must be reversed, the demurrer overruled, and the cause remanded to the Circuit Court, with leave to the defendants to answer, if they be so advised, and for further proceedings not in conflict with the views expressed in this opinion.

*Reversed.*