# Wytheville.

## Commission of Fisheries and Others v. Hampton Roads Oyster Packers and Planters Association.

### June 10, 1909.

1. Oysters—*Surveys of Public Grounds—Conclusive Effect—Power of Legislature.*—The natural oyster beds, rocks and shoals in the bays and rivers of this State are held in trust for the benefit of the people of this State by virtue of constitutional provisions and numerous acts of assembly, and the General Assembly is vested, by the Constitution, with authority, from time to time, to define and determine such natural beds, rocks or shoals by surveys or otherwise, and has the power to declare that such surveys, made under its direction, shall be conclusive on all the courts of the Commonwealth.

2. Oysters—*Baylor Survey—Re-Established Lines.*—The Baylor survey and report of oyster beds, etc., and the Edmonds-Baker survey re-establishing a line or lines of the Baylor survey are each, in pursuance of legislative enactments, conclusive evidence in all the courts of the Commonwealth that the grounds within the limits of such survey and report are natural oyster beds, rocks or shoals, and that there are no natural oyster beds, rocks and shoals lying within the waters of the counties wherein such report and survey are filed other than those embraced in the survey.

3. Oysters—*Public Grounds—Leases—Ultra Vires Acts of Inspector.*—The public oyster grounds of this State are held in trust for the use and benefit of all the citizens of the State, and no person can, by lease or otherwise, acquire the right to use them for any purpose. The statute by which the State guarantees to the lessee of oyster grounds who pays his rent annually in advance the right to continue to use and occupy the same for twenty years, only applies where the lease is made of oyster planting grounds authorized by statute to be leased to planters, and not where the acts of the oyster inspector in making a lease were *ultra vires.*

4. CONSTITUTIONAL LAW—*Due Process.*—"Due process of law" requires that a person shall have reasonable notice, and an opportunity to be heard before an impartial tribunal before any binding decree or order can be made affecting his right to liberty or property. In the case in judgment these requirements have been fully complied with.

5. OYSTERS—*Inspectors*—*Acts Ultra Vires.*—An oyster inspector is but an agent of the State to perform the duties delegated to him by statute, and all persons dealing with him are presumed to know the law, and must take notice of the extent of his authority. The State is not bound by his acts *ultra vires.*

Appeal from a decree of the Circuit Court of Nansemond county. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*W. W. Old & Son* and *Wm. A. Anderson, Attorney General,* for the appellants.

*Jeffries, Walcott, Walcott & Lankford,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

This appeal brings under review the decree of the Circuit Court of Nansemond county, perpetuating an injunction theretofore awarded on a bill filed by appellee against the Board of Fisheries of Virginia and each member thereof, and one Reps Williamson, oyster inspector of Nansemond county, restraining the appellants, each of them and their agents, etc., from requiring appellee to remove the stakes which mark the boundary of certain oyster planting ground situated in the Nansemond river in Nansemond county, occupied and claimed by appellee by virtue of successive assignments from one T. R. Gaskins and others, to whom the disputed ground was assigned in 1894 and 1895 by the then oyster inspector of Nansemond county, the

original assignments having been made under the act of the legislature, approved March 5, 1894 (Acts 1893-4, p. 840), the area of the disputed ground being 182-29/100 acres.

There is no controversy here as to the history of appellee's claim to the grounds in dispute, the crucial question with respect to the title asserted by it being whether or not those under whom it claims ever acquired title to this ground for oyster planting purposes; it being claimed by appellants that this ground is within the lines known as the Baylor survey, and therefore under the law could not have been assigned to anyone for oyster propagation or other purpose. In other words, the questions presented on this appeal are: (1) Is the disputed ground within the Baylor survey? (2) If so, has the appellee, notwithstanding this fact, the right, as it contends, to hold the ground under its contract with the State? and (3) Has any due process of law been provided through which these questions may be heard and determined?

The learned judge of the circuit court gave the following reasons for the decree complained of:

"1. That the evidence does not show that the land of the Hampton Roads Oyster Packers and Planters Association is within the lines of the public oyster grounds of the State, commonly known as the Baylor survey.

"2. That the act of the General Assembly of Virginia, approved February 21, 1900, which appears as section 2139a of the Code of Virginia of 1904, under which petitioners sought to require the removal of the stakes of the association from said grounds, and to permit oyster tongmen to enter the same as public oyster grounds, is unconstitutional and void, in that it fails to provide any notice to be given to the planter or lessee of the property of any procedure under which his rights could be adjudicated, and fails to make provision for any adjudication of his rights after notice, and that the said act if enforced will have the effect of depriving the said association of its property without due process of law."

The following facts appear with respect to the proceedings had before the Board of Fisheries of Virginia, and the Commission of Fisheries (appellant), the latter being the successor to the former, which proceedings culminated in the order of the appellant enjoined by the Circuit Court of Nansemond county in this cause, to-wit:

On June 20, 1904, more than ten citizens of the county of Nansemond, in accordance with section 2082b of the Code, made an application in writing to the Board of Fisheries to have the lines of the Baylor survey re-established and permanently marked in the Nineteenth district of Nansemond county, and gave bond and security as provided by said section.

On the same date, an order was entered by the Board of Fisheries appointing Fred E. Rudiger to make the survey, and on January 18, 1905, the order of June 20, 1904, was so amended as to substitute A. B. Edmonds, of Newport News, a civil engineer, in the place of Rudiger, Rudiger having been unable to make the survey owing to previous engagements, and Edmonds was ordered to proceed as soon as possible to make it.

On or before July 19, 1905, Edmonds filed his report and on that date an order was entered by the Board of Fisheries, after a hearing on the report and survey of Edmonds, relocating and re-establishing the lines of the Baylor survey in the Nineteenth district of Nansemond county, approving the report and survey; and, after reciting that the plat showed certain encroachments on the public grounds by various parties, a resolution was adopted by the board as follows:

"Therefore, be it further resolved, that all parties appearing by said plat to have encroached upon the public grounds, be notified to appear before this board at its next meeting, and show cause why said encroachments should not forthwith be declared public grounds, and their stakes upon the same be at once removed, to-wit: * * * Hampton Roads Oyster Planting and Packing Company, 176 acres, * * *;" the Hampton Roads Oyster Packing and Planting Company men-

tioned being the Hampton Roads Oyster Packers and Planters Association, appellee here.

There was a hearing on the survey and report of Edmonds on August 16, 1905, all of the parties having been notified, and argument by counsel for appellee heard, whereupon the board decided it had jurisdiction in the matter, and the cause was continued to a subsequent meeting of the board to be held at Norfolk, Va., Wednesday, the 6th day of September, 1905, and all the defendants in the cause being present in person or through their attorneys waived the requirements of public notice of the proceedings.

On September 19, 1905 (the meeting of the board having been held on September 6th and continued to this date), the board after a hearing (appellee being represented by one or more of its officers and by counsel) decided that the survey filed by Edmonds on the 19th day of July, 1905, showed a much larger acreage than the plat held by appellee showing the original assignment for 216 acres of ground; and there being a contention between appellee and Edmonds as to the correctness of the survey of the grounds by Edmonds, the board directed that the matter be re-committed to Edmonds with instructions that he go upon the grounds as staked off and claimed by appellee, together with such surveyor as it should select; and that the said surveyors should retrace the work of Edmonds as to it being correct or otherwise; and, further, should survey and plat the entire number of acres of ground held by appellee under the original assignment, reproducing said original plat; and, further, to make survey of the entire holdings of the grounds of appellee, showing the entire number of acres held and the number of acres held within the Baylor survey, and make report of same to the board at its meeting to be held in Norfolk on October 18, 1905.

At the meeting of the board held on October 18, 1905, a hearing was had (appellee being represented by its officers and by counsel) on the report of Edmonds on the part of the Board of

Fisheries, and B. P. Baker, the county surveyor of Nansemond county, on the part of appellee, as to the correctness of the survey of Edmonds filed on July 19, 1905, which survey showed an encroachment by appellee of 176 acres. The survey and report of said surveyors showed that holdings of appellee within the Baylor survey aggregated 182-29/100 acres, and the board decided that the appellee was not holding the said grounds by its own default, but by virtue of authority vested in it by the former holders thereof. After hearing evidence and argument by counsel, the board further decided that appellee had from time to time since acquiring assignment planted oysters and shells thereon, but had not acquired vested rights in the 182-29/100 acres of public grounds in question; that appellee was entitled to a reasonable time within which to remove its planted oysters and shells therefrom, as provided by statute, approved February 21, 1900, and ordered that the assignment of 182-29/100 acres of ground, shown to be within the Baylor survey, be revoked and annulled; that appellee should have until the 30th day of April, 1907, in which to remove its planted oysters from the grounds as shown by a diagram laid before the board, aggregating . . . acres; that appellee should have until the 31st day of March, 1908, in which to remove its oysters and shells from the remainder of said 182-29/100 acres of grounds, aggregating . . . acres, as shown by said diagram, upon which shells were planted, said removal of planted oysters and shells to be made under the terms and conditions as provided by statute; and thereafter appellee should be required to remove all stakes and obstructions from said grounds, and the same was declared to be within the Baylor survey and public oyster grounds, and to be used as such after said dates; and the board further directed the report and plat to be filed and recorded in the Nansemond county clerk's office, together with the decision as to said grounds; all of which were duly filed and recorded.

On March 30, 1906, appellee, by its attorneys, appeared before the board and asked for additional time in which to remove

its planted oysters and shells from said grounds as regulated and fixed by the order of the 18th day of October, 1905, and the board, owing to the absence of parties and conflicting interests, declined to render any decision.

Appellee, by its officer or officers, and by counsel, again appeared before the board on March 21, 1907, and petitioned that the time to remove the oysters be extended from April 30, 1907, to April 30, 1908, every effort "having been made by it to remove the same without being able to do so;" and that matter was continued until the next meeting of the board.

On July 24, 1907, statements and arguments were made before appellant, the Commission of Fisheries, and the matter argued at length, both sides appearing by counsel, and the board recommended and ordered that the 182-29/100 acres of public oyster grounds encroached on by appellee, on which it had planted oysters, and as to which the former Board of Fisheries allowed until the 30th day of April, 1907, within which to remove said oysters, be opened to the public on September 15, 1907, and the stakes of appellee defining the same be removed and placed on the true lines of the oyster grounds which it was entitled to hold.

Thereupon, appellee on or about September 14, 1907, filed its bill in this cause, and upon the filing of this bill an injunction was awarded in pursuance of the prayer thereof enjoining appellants from removing the stakes which mark the boundary of the ground in the bill mentioned, and from taking from appellee the possession thereof, and enjoining and restraining them from taking oysters or causing same to be taken therefrom, and from in any way interfering with or molesting appellee in its possession, occupancy, use or enjoyment thereof.

On November 1, 1907, appellants filed their demurrer and also their answer in the nature of a cross-bill, and on November 4, 1907, appellee filed its demurrer and answer to the cross-bill and an amended and supplemental bill, and afterwards appellants filed their answer to the amended and supplemental bill,

and other proceedings were had, so that on the hearing of the cause upon the pleadings and the depositions of witnesses on behalf of the respective parties, the decree under review was rendered.

Before reviewing the statutes bearing upon the issues involved, it should be noted that "the board on the Chesapeake and its tributaries" was under the statute succeeded by the "Board of Fisheries," and the latter by appellant, the "Commission of Fisheries."

By constitutional provision (section 2, article X of former Constitution, and section 175 of the present) and numerous acts of the General Assembly, the State has jealously sought to guard and protect the natural oyster-beds, rocks and shoals, in the bays, rivers, etc., of the Commonwealth, so that they may be held "in trust for the benefit of the people of this State, subject to such regulations and restrictions as the General Assembly may prescribe, but the General Assembly may, from time to time, define and determine such natural beds, rocks or shoals, by surveys or otherwise."

Deeming it necessary to define and determine the natural oyster-beds, rocks and shoals so held by the State, on February 29, 1892 (Acts 1891-2, p. 816), the General Assembly passed the act entitled "an act to protect the oyster industry of the Commonwealth," and under that act the survey known as the "Baylor survey" was made. The act, after providing that the board on the Chesapeake and its tributaries should, as soon as possible  *  *  *  cause to be made a true and accurate survey of the natural oyster-beds, rocks and shoals of the Commonwealth, how the survey was to be made, the maps and charts to be prepared, returned and filed along with a report of the survey in the clerk's office of each and every county in which there was found natural oyster-beds, rocks or shoals, what the report should be, accompanied by true and accurate notes in writing of the survey, setting forth a description of the lines, with courses and distances, and a description of such landmarks as

might be necessary to enable the oyster inspector to find and ascertain the boundary lines and limits of the natural oyster-rocks, beds and shoals, etc.; that said report should be completed and transmitted to the board of the Chesapeake and its tributaries within three months after the completion of the survey, and the board should cause the same to be published in pamphlet form and transmit copies thereof to the clerk of the county court of the counties where the charts had been filed or directed to be filed, as in the act thereinbefore provided for, the said report to be filed by the clerks of the several counties further provided: "Said survey and report, when so filed, shall be, and construed to be, in all the courts of this Commonwealth, as conclusive evidence of the boundaries and limits of the natural oyster-beds, rocks and shoals lying within the waters of the counties wherein such survey and report are filed; provided, if any natural oyster-rock, bed or shoal is left out in these surveys, they shall not be used for planting grounds, but shall be subject to the general oyster laws of the State."

The act just referred to was, on March 2, 1894, amended; the amendment, which took effect from its passage, appearing in the Code of 1904 as section 2130a, and so far as pertinent to the issues in this case is as follows: "And the said survey and report, when so filed, shall be, and construed to be, in all of the courts of the Commonwealth, as conclusive evidence of the boundaries and limits of all the natural oyster-beds, rocks and shoals, lying within the waters of the counties wherein said survey and report are filed; and shall be construed to mean in all of the said courts that there are no natural oyster-beds, rocks or shoals, lying within the waters of the counties wherein such report and survey are filed other than those embraced in the survey authorized by this act; provided that the said survey and report shall not be so construed in any pending trial or proceeding in any court upon any assignment made prior to the twenty-fifth day of February, eighteen hundred and ninety-two."

Section 2137 of the Code of 1887 relates to assignment of

oyster planting grounds and the duties and powers of oyster inspectors, and this section was amended on February 25, 1892 (Acts 1891-2, p. 596), and sets out more fully by whom and the steps to be taken and the procedure to be had in order to obtain a lease of any part of the residue of the beds of the bays, rivers and creeks of the State in excess of what was reserved for the riparian owner, *other than the natural beds or rocks;* the duties of the oyster inspector to whom application may be made for a lease of oyster planting grounds, the number of acres which might be assigned to any one applicant, etc.; and that section was again amended on March 5, 1894 (Acts 1893-4, p. 842), but that amendment was inconsequential. Under section 2137 of the Code, *supra,* the oyster inspector himself had to locate and assign the oyster planting grounds, while under the amendments, *supra,* which were in force from their passage, the applicant himself has to give to the inspector certain information so as to enable him to survey and assign the ground applied for, and the inspector has to make the assignment, provided he ascertains it not to be natural oyster-rock, bed or shoal, *i. e.,* that the ground applied for is not, nor any part thereof, within the lines of the Baylor survey. Under this statute so amended, the assignments were made to Gaskins and others, through whom appellee claims the grounds here in question; and that they were made subsequent to the date the act and its amendment took effect is not and could not be controverted.

That the acts of the inspector in making these assignments were purely ministerial, and none the less so because he had to determine the existence of facts which made it necessary for him to act, is settled by the decision of this court in *Lewis* v. *Christian,* 101 Va. 135, 43 S. E. 331.

That case also recognizes that under the existing statutes the limits and boundaries of the natural oyster-rocks, beds and shoals in every county in the State are conclusively established by the survey and report made by the fish commissioners, *i. e.,*

the Baylor survey, and the report, etc., returned and filed therewith; the only question which the oyster inspector is required to determine in reference to these matters being whether a particular oyster-rock is natural oyster-rock according to said survey and report, and if so, and stakes have been placed on the natural oyster-rock or beds, it becomes his imperative duty to have them removed.

What may be the effect of the assignment of oyster grounds within the lines of the Baylor survey, whether done purposely or by mistake, is a subject more properly to be discussed in another branch of this case.

As appears in the statement above of the proceedings had before appellant, Commission of Fisheries, and its predecessors in office, A. B. Edmonds, a competent surveyor, acting on the part of the Board of Fisheries, and B. P. Baker, the county surveyor of Nansemond county, on the part of appellee, agreed that the survey previously made by Edmonds was correct, and that this survey showed an encroachment by appellee upon the grounds within the limits of the Baylor survey, re-established and permanently marked in the Nineteenth district of Nansemond county, to the extent of 182-29/100 acres, the acreage which is here the subject of controversy.

What the evidence was to substantiate the assignments to Gaskins on October 8, 1894, and to one Lilliston on the 8th of May, 1895, through whom appellee claims, does not appear in the record; so that, whether the fact, as reported by Edmonds and the county surveyor of Nansemond county, that appellee has within its grounds as staked off 182-29/100 acres of natural oyster-rock, which is really within the Baylor survey, is due to an intentional *ultra vires* act or to a mistake on the part of the oyster inspector in making the assignments to Gaskins and Lilliston, or to the moving out of the stakes marking the boundaries of the acreage within the limits of those assignments, so as to take in the disputed grounds, is not by any means made clear by the evidence before us; and perhaps this is immaterial.

It is also to be noted that in the foregoing statement it appears that appellee, at least seemingly, acquiesced in the establishment of the lines of the Nineteenth district of Nansemond county by Surveyor Edmonds, concurred in by the county surveyor of Nansemond county, the latter of appellee's own selection, and accepted the terms of the Board of Fisheries as to the time within which the planted oysters on the disputed grounds should be removed, and did not present its bill in this cause until the day before the time allowed by the board for the removal of planted shells and oysters from the disputed ground was to expire, viz., September 15, 1907, the time originally allowed by the order of the board made October 18, 1905, having been at the solicitation of appellee from time to time extended, so that it was to expire on September 15, 1907, nearly two years after the original order was made; and the bill was only then filed by reason of the board's refusal to grant further time.

We deem it wholly unnecessary to consider the question extensively argued upon the briefs of counsel, whether or not appellee should be estopped by its acts to deny appellants' right and authority to require the planted oysters and shells upon the disputed grounds to be removed and the stakes marking the grounds moved to their proper location. In our view of the case, the right and duty of appellants to have these oysters and shells removed and the marks of the true line of the Baylor survey re-established became fixed and determined by the re-establishment by Edmonds and Baker of the limits and boundaries of the Nineteenth district of Nansemond county, as fixed by the Baylor survey.

As we have seen, the statute in its original form made the survey and the report made pursuant to the statute conclusive in all the courts of the Commonwealth that the grounds included therein are natural oyster-rocks, beds or shoals, and could not be leased to any one for oyster planting purposes; and by the amendment to the statute of March 2, 1894, *supra,* "said survey and report," when so filed, "shall be construed to mean in all

the said courts that there are no natural oyster-rocks, beds or shoals, lying within the waters of the counties wherein such report and survey are filed, other than those embraced in the survey authorized by this act." It was plainly the intent and purpose of the legislature to make the survey and report of the limits and boundaries of the natural oyster-rocks, beds and shoals, authorized to be made, conclusive evidence in all the courts of the Commonwealth upon two propositions: first, that the grounds within the boundaries and limits of the report and survey are natural oyster-beds, rocks or shoals; and, second, that there are no natural oyster-beds, rocks or shoals, lying within the waters of the counties wherein such report and survey are filed other than those embraced within the report and survey.

The probative force and effect given to a survey and report made and filed pursuant to the statute as amended, *supra,* authorizing and requiring the making and filing of the Baylor survey, is in no degree changed or impaired by the Act of 1899-1900, as amended, and now section 2082b, *supra,* and which authorized the Board of Fisheries to re-establish the line or lines of the Baylor survey, when in the judgment of the board it became necessary. The latter act is in aid of the former, and clearly but an amendment thereto, and became an integral part thereof; therefore, a survey and report duly made and filed pursuant to the statute as amended, re-establishing a line or lines of the original Baylor survey, is entitled to the same probative force and effect in the courts of the Commonwealth as is given by statute to the Baylor survey as originally made. If this were not so, section 2082b of the Code would serve to defeat the very purpose of the legislature to locate, determine and define conclusively the boundaries and limits of the natural oyster-rocks, beds and shoals within the waters of the Commonwealth, and throw open a flood-gate of litigation with respect to such boundaries and limits whenever it might be found necessary to re-establish a line or lines of the Baylor survey, caused

by the removal or displacement, from one cause or another, of the stakes, buoys or other marks used originally in marking and locating such line or lines.

The wisdom of the legislature in giving to a survey and report of the oyster-beds, rocks and shoals in the waters of the Commonwealth, the probative force and effect that it did, is demonstrated by the wide range this litigation and the evidence relied on in support of appellee's contentions have taken. There would be no end to litigation concerning the limits of the Baylor survey, if the appellant, the Commission of Fisheries, could be called on to litigate in the courts the correctness of every survey re-establishing a line or lines of the Baylor survey, and that question to be determined upon a mere preponderance of the evidence that might be adduced. It was plainly the purpose of the legislature to put an end to such litigation by establishing a final arbiter of all questions as to the location of a line or lines of the Baylor survey, and to relieve the officers of the State in charge of the oyster industry from litigation in the courts concerning the same.

Conceding, however, for the sake of argument, that the survey and report made by Edmonds, October 18, 1905, and verified and approved by Baker, who was selected by appellee to act on its behalf, is not to be treated as conclusively showing that the 182-29/100 acres of disputed ground is within the limits of the Baylor survey, we are nevertheless of opinion that the evidence in the case establishes the correctness of Edmonds' survey and report.

Appellee's immediate assignor of the grounds which include the disputed acreage was J. D. Armstrong, and when Armstrong made this assignment on July 1, 1903, there was no survey, the lines being given by Armstrong, or the men he had there, and this is admitted by the officers and employees of the appellee testifying in this case. When the holdings of Armstrong of 216 acres were assigned to him and Lilliston on September 1, 1895, a survey was made by P. St. J. Wilson,

deputy surveyor of Nansemond county, which survey included the grounds assigned to Gaskins, October 8, 1894, and to Lilliston, May 8, 1895, and the testimony of Wilson clearly shows that the whole of the acreage of that survey was outside of the Baylor lines of public ground No. 1, Nineteenth district of Nansemond county. Wilson says that the southern line of public ground No. 1, viz., the line from corner No. 1 to corner No. 4, coincided with the northern line of the property surveyed by him at that time for Armstrong and Lilliston, now claimed by appellee; that he made a survey of the southern line of public ground No. 1, and located by instruments the two corners thereof, viz., corner No. 1 and corner No. 4, according to a pamphlet, entitled "Nansemond County Oyster Records, Distances, Bearings, Etc.," and a plat, entitled "James River Chart No. 4; Public Oyster Grounds, State of Virginia, 1892, Surveyed Under the Direction of J. B. Baylor, Asst. U. S. Coast Geodetic Survey" (Baylor's notes), filed with the deposition of Edmonds and verified by the witness, Smith, as being copies of the survey and report filed in Nansemond county clerk's office, June 23, 1894, pursuant to the act of February 29, 1892, as amended March 2, 1894; and that he (Wilson) then located the 216 acres outside of the lines of public ground No. 1.

Wilson is not only shown to be a surveyor of much experience, but we are unable to find any evidence in the record to refute or contradict his evidence in this respect; nor is there evidence to show that the stakes were at that time located correctly and in accordance with the survey of Wilson, he having no recollection of this fact.

Baker, who had been county surveyor of Nansemond county from 1872 to January 1, 1908, testifies that on January 23, 1900, by virtue of some court order, either of the Nansemond county court or of the Board of Fisheries, he made a survey of the Baylor line of public ground No. 1 from corner 1 to corner 4; that he and Wilson ran that line in order that the tongers could know their line, and Armstrong's people their line; that

he planted about twenty buoys on the line; *that Armstrong claimed in establishing these lines that they ran across two beds of his planted oysters,* and consequently he claimed beyond, he owning the property at the time of this survey of which he and Lilliston had been in possession since 1895. So that, if the stakes were correctly located on September 21, 1895, it is to be noted that their location, according to Baker's testimony, had either been changed, or if ever correctly located, were certainly not prior to January 23, 1900.

Baker was asked: "Did you find the lines and stakes there on the property owned by Mr. Armstrong within the Baylor survey?" "A. He did not have any stakes. We were to establish that line." "Q. Did you find that the property claimed by Mr. Armstrong was in the lines of the Baylor survey, or not?" "A. No." "Q. In other words, you say Mr. Armstrong had no stakes?". "A. We did not see any stakes. Mr. Armstrong was along and we did not see any stakes." "Q. Can you say by looking at this plat (an exhibit with the pleadings) the property was the same as claimed by Mr. Armstrong at that time?" "A. I can't say." "Q. In other words, you said you surveyed public ground from No. 1 to No. 4?" "A. Yes." "Q. Did you see any stakes there?" "A. There were some stakes, but I don't know anything about them. There were stakes all around, every which way, but there was nothing to designate any lines of Armstrong; and if there were, nothing was said to us. We went there under order of the court to establish the lines, and we did so."

Wilson, who made the survey of September 21, 1895 (mentioned above), further testifies that upon request he was present at the survey of January 23, 1900; that at that time, as well as he could remember, the line (meaning doubtless the line from corner No. 1 to corner No. 4) was relocated; the stakes of the property claimed by Armstrong were *within* the lines of public ground No. 1; and that he could not recall whether they were moved back into their original places on that day."

From this evidence one of two things must be true: either that the stakes were, at the time of the survey of Janaury 23, 1900, correctly placed along the Baylor line from corner No. 1 to corner No. 4 and afterwards moved within the lines of public ground No. 1, or the plat filed by Edmonds on October 18, 1905, showing the encroachment of 182-29/100 acres, must be incorrect.

The only testimony that the stakes were, at the time of the survey of January 23, 1900, correctly placed along the Baylor line from corner No. 1 to corner No. 4, is that of Williamson, who states that at the time they (doubtless meaning Baker, Wilson and himself) put Armstrong on the line, but he is corroborated by neither Baker nor Wilson in this statement. Baker's statement is that they placed about twenty buoys on the line, and Wilson had no recollection of this.

By concession of the general manager of appellee, the survey and location of appellee's ground by Edmonds and Baker is correct, except as to the line from corner No. 1 to corner No. 4. That this disputed line was run and rechecked by Edmonds and Baker, is testified to by both, and a very strong and significant corroboration of their testimony is to be found in the fact that appellee, upon the report of that survey, applied to the Board of Fisheries and obtained time within which to remove its planted oysters and shells within the limits of the Baylor survey; that it applied for and received, as a matter of grace, an extension of the time, and never assailed the correctness of the Edmonds-Baker survey and report in court until a further extension of time was denied by the board, and nearly two years after that plat and report had been finally acted upon by the board.

We might review the oral testimony further, but to do so would serve no purpose other than to show another demonstration of the wisdom of the legislative intention to make the Baylor survey and report, and the survey and report of a surveyor duly appointed to re-establish a line or lines of the Baylor

·survey, conclusive evidence in all ·the courts of the Commonwealth that the grounds within the limits of such survey and report are natural oyster-rocks, beds or shoals, and that there are no natural oyster-beds, rocks and shoals lying within the ,waters of the counties wherein such report and survey are filed other than those embraced in the survey.

The view that the Baylor survey, and the Edmonds-Baker survey re-establishing the lines of public ground No. 1, in Nineteenth district, Nansemond county, as surveyed and located by the Baylor survey and report, are conclusive and could not be challenged by subsequent proceedings in court, is sustained by the Supreme Court of the United States in *Gardner v. Bonestell,* 180 U. S. 362, 45 L. Ed. 574, 21 Sup. Ct. 399, where it was held: "It is a well settled rule of law that power to make and correct surveys of public lands belongs exclusively to the political department of the government, and that the action of that department within the scope of its authority, is unassailable in the courts, except by a direct proceeding. · The determination by the land department in a case within its jurisdiction of questions of fact depending on conflicting testimony is conclusive, and cannot be challenged by a subsequent proceeding in the courts."

And in a still later case, *Bates & Guild Co. v. Payne,* 194 U. S. 106, 48 L. Ed. 894, 24 Sup. Ct. 595, the same court held that where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of its correctness and the courts will not ordinarily review it although they have the power and will occasionally exercise the right of so doing. In the course of the opinion it is ·said: "It has long been the settled practice of this court in land cases to treat the findings of the land department upon questions of fact as conclusive, although such proceedings involve, to a certain extent, the exercise of

judicial power.   As was said in _Burfenning_ v. _Chicago, St._
_Paul, &c. R. R._, 163 U. S. 321, 41 L. Ed. 175, 16 Sup. Ct.
1018: 'Whether, for instance, a certain tract is swamp land
or not, saline land or not, mineral land or not, presents a ques-
tion of fact not resting on record, depending on oral testimony;
and it cannot be doubted that the decision of the land depart-
ment, one way or the other, in reference to these questions, is
conclusive and not open to litigation in the courts, except in
those cases of fraud, etc., which permit any determination to be
re-examined.' "   Citing with approval _Gardner_ v. _Bonestell,_
_supra._

The second contention of appellee (_i. e._, if it be determined
that the preponderance of evidence shows that the 182-29/100
acres of disputed grounds are within the lines of the Baylor
survey as re-established by the Edmonds-Baker survey), that
notwithstanding such location of the grounds in dispute appellee
is entitled to the use of the property, rests solely upon the doc-
trine of equitable estoppel, whereby the State is estopped to
claim appellee's ground under the facts of this case; or else
upon the erroneous theory that appellee, having acquired a lease
of these grounds from the State and paid the rent therefor, has
an irrevocable right to the use of the grounds for the statutory
period of twenty years.

This contention leaves wholly out of view the fact that, if it
be public oyster grounds, neither appellee nor its assignors ever
could have acquired by contract of lease or otherwise the right
to use these grounds for any purpose, but they are by law held
in trust for the use and benefit of all the citizens of the State.

It is very true that section 2137a of the statute, now chapter
97 of the Code of 1904, relating to the protection of the oyster
industry of the Commonwealth, contains this clause: "When
the above amounts (rents for grounds leased for oyster planting
purposes) are paid, then so long as the rent is paid annually
in advance the State will guarantee the absolute right to the
renter to continue to use and occupy the same for the period of

twenty years thereunder acquired;" but clearly the protection of that provision of the statute only applies where the lease was made of oyster planting grounds authorized by the statutes to be leased to planters, and not where the acts of the oyster inspector in making a lease were *ultra vires.* If that were so, *i. e.,* if the lessee or renter, notwithstanding the acts of the inspector in making the lease were *ultra vires,* be entitled under section 2137a, *supra,* to hold the leased ground, why should the legislature, as a matter of grace, have authorized the officers of the State charged with the supervision and control of the oyster grounds and the oyster industry of the Commonwealth, in their discretion, to allow a reasonable time within which a renter could remove his planted oysters or shells from grounds found to have been erroneously leased to him, either by mistake or otherwise? Natural oyster-beds, rocks and shoals cannot be leased at all, or title thereto acquired, or private use thereof made, and the constitutional provision, *supra,* as well as the statutes steadfastly guard against interference with the citizens of the State in their right to take oysters therefrom, subject only to the regulations of the statutes as to season, etc.

That this has been the policy of the State steadfastly adhered to, we need only refer to the following statutes in force when the leases under which appellee claims were made and when it took an assignment of those leases: Section 1338 of the Code of 1887, provides that no grant shall be issued by the Register of the Land Office to pass any estate or interest of the Commonwealth in any natural oyster-bed, rock or shoal, whether the bed, rock or shoal ebb bare or not.

Section 2153 of the Code of 1887, as amended February 25, 1892 (Acts 1891-2, p. 595), provides that no person shall stake in or use for the purpose of planting oysters or shells, or for depositing oysters while making up a cargo for market, any natural oyster-bed, rock or shoal, or any part thereof; nor shall continue to occupy the same, if occupied and staked off; with power to the oyster inspector to remove all stakes, etc., if, after notice, the person refuses to remove same.

And section 2341 of the Code provides that grants by the Register of the Land Office of any estate or interest in any natural oyster-bed, rock or shoal, whether the same ebbed bare or not, should be absolutely void.

The remaining assignment of error, which presents the question, whether or not the order of the Board of Fisheries directing the stakes of appellee to be removed from the grounds within the lines of the Baylor survey as re-established by the Edmonds-Baker survey and report, and the statute under which the order was made, is the taking of appellee's property without due process of law, is upon reason and authority so obviously against the contention of appellee that an extended discussion of the question is unnecessary.

It is very true that "due process of law" requires that a person shall have reasonable notice and opportunity to be heard before an impartial tribunal before any binding decree or order can be made affecting his rights to liberty or property; but this constitutional safeguard cannot avail appellee upon the uncontradicted facts as to the procedings before the Board of Fisheries and the Commission of Fisheries touching this controversy. The proccedings were had before the Board of Fisheries and its successor in office, a department of the State government, to whose judgment and discretion the legislature has committed the supervision and control of the natural oyster-beds, rocks and shoals within the waters of the Commonwealth, as well as the oyster industry of the Commonwealth, and made the decision of that tribunal conclusive of all controversies with respect to the same. The proceedings in this case before that tribunal were in strict accordance with the requirements of the statute, and not only did appellee have reasonable notice thereof, but every reasonable opportunity to be heard and was heard from time to time before the order it now complains of was made by the board. It would be difficult to find a case in which the required "due process of law" has been more fully met and complied with.

In the case of *Reetz* v. *Michigan,* 188 U. S. 505, 47 L. Ed. 563, 23 Sup. Ct. 390, in point here, the following is quoted from the opinion of Mr. Justice Matthews in *Hurtado* v. *California,* 110 U. S. 516, 28 L. Ed. 232, 4 Sup. Ct. 111, 292, reviewing at length the authorities and discussing the elements of due process of law: "It follows that any legal proceeding enforced by public authority, whether sanctioned by age or custom or merely devised in the discretion of the legislative power, in the furtherance of the general public good, which regards and preserves those privileges of liberty and justice, must be held to be due process of law." See also *Murray* v. *Hoboken L. Co.,* 18 How. 272, 15 L. Ed. 372; *Ex parte Wall,* 107 U. S. 265, 27 L. Ed. 552, 2 Sup. Ct. 569.

The principles announced in *Violett* v. *Alexandria,* 92 Va. 561, 23 S. E. 909, 53 Am. St. Rep. 825, 31 L. R. A. 382, have no application here. In that case, the title of the owner of the property proposed to be taken for a public use without compensation was not questioned; while here no property of appellee to which it has title or could have acquired a title or interest in is taken or proposed to be taken.

In *Richardson* v. *United States* (C. C.), 100 Fed. 714, the plaintiffs sued the United States for compensation for certain lands taken for public purposes by the United States in dredging out the channel of a river under the act of Congress, in which the plaintiffs claimed the right to about 40 acres of bottom assigned to them under the laws of Virginia for oyster planting purposes. It appeared that the assignment of these grounds was not made in conformity with statutory authority; and the opinion of the court, after a review of the Virginia statute, and declaring that an assignment of oyster planting grounds not authorized by the statute will not even serve to confer upon the assignee color of title, but is void, says: "Can the petitioners, in the face of this statute, so in evidence, come into this court and put the United States in their place, and ask just compensation for lands held, used and occupied by them unlawfully?"

In *Silliman* v. *F. O. & Ch. R. R.*, 27 Gratt. 119, the following is quoted with approval: "In every instance (Mr. Justice Miller said in delivering the opinion in which a majority of the court concurred in the *Floyd Acceptances Case,* 7 Wall. U. S. R. 680, 19 L. Ed. 169), a person making a contract with the government, through its officers and agents, must look to the statutes under authority of which the agent as officer proposes to act, and see for himself that his contract comes within the terms of the law.   The same rule would apply, *a fortiori,* to persons making contracts with the agents or officers of bodies corporate."

An oyster inspector is but an agent of the State to perform the duties delegated to him by statute, and all persons dealing with him must exercise care as to the extent of his authority and powers, and they are presumed to know the statutes under which he is called upon to act.   This is but the general doctrine applying to all agencies, and the authorities are uniform that all acts of an agent outside of the scope of his authority are *ultra vires* and void.   1 Am. & Eng. Ency. L. p. 981, and note, p. 988, and note; *State* v. *Chilton,* 49 W. Va. 453, 39 S. E. 612; *N. Y. &c. Co.* v. *Harrison* (C. C.), 16 Fed. 688; Story's Agency (9 ed.), sec. 307a; Mechem's Pub. Off., 512; *Mayor, &c.* v. *Eschbach,* 18 Md. 276; *Delafield* v. *State,* 26 Wend. 192.

The powers and duties of all governmental officers are "limited and defined" by law, by statute where one exists as in this case, and the law is the sole criterion of authority; and no custom can enlarge or vitiate it.   *The Floyd Acceptances Cases, supra,* 7 Wall. 666, 19 L. Ed. 169; *Davis* v. *Gordon,* 87 Va. 564, 13 S. E. 35.

In *Stainback* v. *Read & Co.,* 11 Gratt. 286, 62 Am. Dec. 648, the court said: "It is equally well settled that a party dealing with an agent acting under a written authority, must take notice of the extent and limits of that authority.   He is to be regarded as dealing with the power before him; and he must at his peril observe that the act done by the agent is legally identical with the act authorized by the power."

The principle applies as well where the agency is that of a public officer clothed with defined and limited powers and prescribed duties to be found in existing laws, as where the agency is created by writing signed by an individual firm or corporation. See also *Mayor of Baltimore, &c.* v. *Reynolds,* 20 Md. 1, 83 Am. Dec. 535.

We are of opinion that upon every branch of this case the decree complained of is erroneous and has to be reversed and annulled; and this court will enter the decree the circuit court should have entered, dissolving the injunction awarded appellee and perpetuated, and dismissing appellee's bill.

*Reversed.*