## Richmond.

### COLEMAN AND OTHERS v. CLAYTOR.

#### APRIL 9, 1896.

1. MULTIFARIOUSNESS—*Defendants Having a Common Interest and Common Defence.*—Defendants who have a common interest and a common defence are properly joined in one suit, and a demurrer to a bill which charges community of interest and defence is properly overruled.

2. OYSTERS—*Application for Planting Ground.*—A request to an inspector of oysters, that if anyone else applied for certain ground for planting and propagating oysters then the party preferring the request should be allowed to take it, is not such an application for location as the law contemplates or requires. The main object of the oyster law is to obtain revenue, and this would be defeated if such conditional applications were permitted. The ground being unoccupied, is open to location to him who first applies for it in the manner provided by the statute. The mere fact that other parties had previously rented the ground, under a former statute, gives them no superior claim thereto over other applicants who have complied with the statute.

Appeal from a decree of the Circuit Court of Gloucester county, pronounced November 16, 1893, in a suit in chancery, wherein the appellee was the complainant, and the appellants were the defendants.

*Affirmed.*

The opinion states the case.

*J. N. Stubbs,* for the appellants.

*T. G. Jones* and *Ro. McCandlish,* for the appellee.

RIELY, J., delivered the opinion of the court.

The court did not err in overruling the demurrer to the bill. The matter in controversy was the assignment of cer-

tain ground for planting oysters. The material averments of the bill are that the ground was not occupied or rented by anyone; that it had formerly been in the occupancy of the defendants, who are the appellants here, as lessees under the old law, but had not been used by them for planting oysters; that in having their location surveyed and marked with stakes as required by the new law, they had left outside of their bounds the ground in controversy and abandoned it; that the ground being so unoccupied and not rented, the complainant had applied to the deputy inspector of oysters to have it assigned to him; that the deputy inspector had posted notice of his application as required by law, and that the complainant was willing and ready to comply with all the requirements of the law; but that the inspector and deputy inspector, "conniving and confederating" with the said defendants, who claimed the right to have the ground assigned to them by reason of their former occupancy under the old law, had caused the ground to be surveyed and platted, and was about to assign it to the said parties in disregard of the rights of the complainant. The bill, after making the inspector and deputy inspector and the said persons defendants, prayed that the inspector and deputy inspector be enjoined and restrained from assigning the ground to the said persons, and that they be required to lay off and assign it to the complainant.

The only reason assigned in support of the demurrer was that the appellants claimed the disputed ground in severalty, and that the defence of each would be separate and distinct. This, if true, does not appear from the face of the bill. The complainant, in his bill, avers that the ground in controversy was unoccupied, and claimed the right to have the whole assigned and rented to him as the first applicant for it, and alleged that the inspector and his deputy were about to assign it to the defendants, simply because they had occupied it under the old law, although they had not

applied for it as the law required, but had abandoned it. The bill shows on its face that each of them was directly interested in the subject matter of the suit, and that their defence, if any they had, was common to them all. Having a common interest and a common defence, it was not improper that they be joined in one suit and a multiplicity of suits thereby prevented.

All of the respondents answered the bill, and each of them filed his separate answer. The answers of the contestants for the ground, which the appellee claimed should be assigned to him, are literal copies of one another. Each sets up the same defence and in the same identical words. The answers themselves demonstrate the propriety of bringing all the parties before the court, and having the matter in controversy determined in one instead of several suits.

The testimony shows that the appellants had rented and held under the former law certain ground for planting or propagating oysters, which included the ground now in controversy; but when they proceeded to rent under the law as amended, which required, among other things, that all locations should be *surveyed* and marked by suitable stakes, they did not include the ground in controversy within their location or survey, or rent it. They did, however, inform the inspector of oysters, whose duty it was under the law to assign locations for planting oysters, that if anyone else made application for the ground so left out and abandoned they would then rent it, and wished him to assign it to them.

While the ground was unoccupied and not rented, the appellee applied in February, 1893, to the deputy inspector to rent it and to have it assigned to him; and thereupon notice of his application was posted by the deputy as required by law. It was then, after such application had been made and notice thereof posted, that the appellants came forward and demanded that the ground be assigned to them in pursuance of their request made in May, 1892, nearly a year

before, that if anyone else applied for this ground, they, in that event, wanted it. Theirs was not such an application as the law contemplated or required. It was in reality under the law not an application at all. Indeed, so far as the record discloses, the application of the appellee was the only one made for the ground in controversy, or of which notice was posted in obedience to the law.

The main object of the law is to obtain revenue for the State; and if such conditional applications for locations for planting oysters as the appellants rely upon, were allowed to prevail against the claims of actual applicants, the State would lose much of the revenue that the Legislature expected, with good reason, would be derived from this source. Much planting ground would remain unoccupied, for *bona fide* applicants would be deterred from applying to rent it in such case, lest they should be drawn into expensive litigation; and, if they did not make application to the inspector for it, it would remain unrented and the State be deprived of the revenue it ought to yield. The inspector had no right to receive or regard the conditional application shown in this case, and relied upon by the appellants, but it was his duty, unless good cause was shown against it, to assign the ground to the appellee at the expiration of the thirty days, for which notice of his application was required to be posted.

It is shown by the testimony that, although the ground in controversy had been surveyed and platted at the time of the service of the injunction awarded in this case, yet the rent had not been paid, nor had the survey and plat been returned to the clerk's office for recordation, but they were withheld by the inspector and his deputy to await the determination of the controversy by the proper tribunal.

The Circuit Court rightly decided that the ground should be assigned to the appellee, and its decree must be affirmed.

*Affirmed.*