Syllabus.

# Wytheville.

## W. D. STEELMAN, OYSTER INSPECTOR, WILLIAM C. BUNTING, AND THE COMMISSION OF FISHERIES OF VIRGINIA v. SAMUEL B. FIELD.

June 11, 1925.

Argued before Judge Chichester took his seat.

1. ACCRETION—*Reliction—Alluvion—Rights of Riparian Owners.*—The increase of land adjacent to the seashore, derived from alluvial deposits, happening so gradually that the increase could not be observed while actually going on, although a visible increase took place from year to year, belongs to the owner of the land bounded upon the sea. The riparian owner gains the accretion, whether by reliction—the gradual and imperceptible recession of the water—or by alluvion—the gradual and imperceptible accretion from the water.

2. RIPARIAN RIGHTS—*Right of Access to the Water—Accretion.*—The rule that accretions belong to the riparian owner preserves the fundamental riparian right of access to the water, the right to be and remain a riparian owner, which frequently constitutes the chief value of the land.

3. RIPARIAN RIGHTS—*Boundary of Land on Water—Section 3574 of the Code of 1919.*—Section 3574 of the Code of 1919, in terms extends the rights of riparian owners of lands on bays, rivers, creeks and shores of the sea to low water mark. However this line may change either for the advantage or disadvantage of the riparian owner, low water mark remains his true boundary under the Virginia statute. The title of the Commonwealth to the public waters likewise shifts with the shifting sands.

4. RIPARIAN RIGHTS—*Assignment of Oyster Planting Grounds—Area between High Water Mark and Low Water Mark.*—The statute authorizing the assignment of oyster planting grounds in the public waters of this Commonwealth does not permit the assignment of that area which lies between high water mark and low water mark, for the all-sufficient reason that the Commonwealth has no title thereto and because it is private property which belongs to the owner of the adjacent highland.

5. RIPARIAN RIGHTS—*Assignment₁ of Oyster Planting Grounds—Suit for Injunction by Riparian Owner—Case at Bar.*—The instant case was a

suit to enjoin an oyster inspector and the Commission of Fisheries from assigning certain oyster grounds between high and low water marks, the ownership of which was claimed by complainant. Defendants contended that complainant had acquired no title by accretion to that part of a sand beach formed by reliction or alluvion which had overran and overlapped the public waters adjacent to complainant's property and claimed that the Commonwealth owned to high water mark, notwithstanding this accretion.

*Held:* That the oyster inspector had no right to invade complainant's private property to take it from him for the purpose of assigning it to another for oyster planting grounds.

6. INJUNCTION—*Control of the Action of an Oyster Inspector—Judicial or Quasi Judicial Decisions—Case at Bar.*—In the instant case, a suit to enjoin an oyster inspector from assigning complainant's land as oyster planting grounds to another, it was contended that a court of equity had no jurisdiction, because it is sought to direct and control the action of the oyster inspector, whose duty requires him to make judicial or *quasi* judicial decisions as the basis of his action or proposed action.

*Held:* That while an oyster inspector, in the act of making assignments, has to exercise his judgment and any error which he may make cannot be corrected by mandamus, yet this does not mean that he cannot be restrained by injunction from assigning or attempting to assign lands, the title of which is not in the Commonwealth, and which are not within the public waters.

7. OYSTERS—*Oyster Inspector—Assignment of Oyster Planting Grounds—Injunction.*—An oyster inspector is an agent of the State with his powers delegated and defined by the statute, so that he can only act when and as authorized by the statute. If he exceeds his powers, he becomes a mere trespasser and may be enjoined.

Appeal from a decree of the Circuit Court of Accomac county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*Mapp & Mapp, S. James Turlington* and *W. D. Cardwell,* for the appellants.

*Benjamin T. Gunter* and *James E. Heath,* for the appellee.

PRENTIS, P., delivered the opinion of the court.

This is an appeal from a decree which enjoined William D. Steelman, oyster inspector, and the Commission of Fisheries of Virginia from assigning to William C. Bunting certain oyster grounds at Assateague Beach or Island, between high and low water mark, the ownership of which is claimed by Field.

This is a fair statement of the facts as claimed by the appellants: Samuel B. Field is the owner of a large tract of land, being the lower end of Assateague Beach or Island, bordering the Atlantic Ocean, east of Chincoteague Island, in the county of Accomac. He shows title originally derived under a patent to Col. Daniel Jenifer by Sir Nicholas Francis Howard, then Governor of Virginia, on April 20, 1687. Since the title under the original grant vested, and especially within the last fifty years, the southern or lower end of the island, the soil of which is practically all sand, and since 1859, by accretion, there has been added thereto approximately 900 acres by the formation of a long sand bar above the tide, extending southward and westward, encroaching upon the body of water known locally as Tom's Cove, but called Assateague Anchorage upon the United States Coast and Geodetic Charts. Tom's Cove, especially the northeastern part thereof, embraces many acres of very valuable oyster and clamming grounds, belonging to the Commonwealth of Virginia, part of which have been set apart under the statute as public clamming grounds, and part leased to the citizens of the State for oyster planting purposes. The residue of the cove, so far as it continues to be below low water mark, remains the property of the Commonwealth, assignable to its citizens under the statute relating to the planting of oysters in public

waters. The process by which the southern end of this island or sand bar has been formed and the continuing progress of such formation has resulted and continues to result in the extension of the island in a southwardly and westwardly direction, gradually encroaching upon such public waters, and so extending the low water mark. As these changes take place, Field has claimed and still claims that his ownership continues with the movement of the sands; that the new lines of low water mark, as so changed from time to time extend the true lines of his ownership; and that he thereby acquires title down to the new low water mark, thus in that vicinity diminishing the area of oyster planting grounds, the title of which was theretofore in the Commonwealth.

[1] 1. The appellants are here contending, first, that the appellee, as the owner of the upland of Assateague Island, has acquired no title by accretion or otherwise to that part of the sand beach which has overrun and overlapped the public waters adjacent to the island in Tom's Cove, and they claim that the Commonwealth owns to high water mark notwithstanding this accretion.

The question thus raised presents no legal difficulty whatever. This process of accretion, so described, is not different from the process by which similar sand bars have appeared along the coast. It has been said that Cape Cod, Sandy Hook and Highland Light were all formed in this way.

The circumstances were similar as to the land involved in *Camden & Atlantic Land Co.* v. *Lippincott*, 45 N. J. L. 410, and this is there said: "The increase of land adjacent to the seashore, derived from alluvial deposits, happening so gradually that the increase could not be observed while actually going on, although

a visible increase took place from year to year, belongs to the owner of the land bounded upon the sea. *Rex v. Lord Yarborough*, 3 B. & C. 91; S. C. in H. of L., 5 Bing. 163; *County of St. Clair v. Lovingston*, 23 Wall. 46."

The question as to land bounded by the James river arose in this State in the case of *C. & O. Ry. Co. v. Walker*, 100 Va. 85, 40 S. E. 633, 639, where it is held that the owner of the river shore is entitled to such accretions, and Keith, P., said this: "We conclude, on this branch of the case, that the Chesapeake and Ohio Railway Company is a fee simple riparian proprietor, clothed with capacity to take *jure alluvionis*, and that the water line upon James river, no matter how it shifts, remains the boundary of its property, and that it and those under whom it claims having acquired title and possession, it attaches to all the accretions which have been added to it."

So far as we know, the view so clearly expressed is nowhere denied, and it appears to be universally held that the riparian owner gains the accretion, whether by reliction—the gradual and imperceptible recession of the water— or by alluvion—the gradual and imperceptible accretion from the water.

[2] Various reasons have been from time to time given for this rule which preserves the fundamental riparian right of access to the water, the right to be and remain a riparian owner, which frequently constitutes the chief value of the land.

In *Lamprey v. State*, 52 Minn. 197, 53 N. W. 1142, 18 L. R. A. 670, 38 Am. St. Rep. 541, in applying the rule to an inland lake, this is said:

"Courts and text writers sometimes give very inadequate reasons, born of a fancy or conceit, for very wise and beneficent principles of the common law; and we cannot help thinking this is somewhat so as to the

right of a riparian owner to accretions and relictions in front of his land. The reasons usually given for the rule are either that it falls within the maxim, *de minimis lex non curat*, or that because the riparian owner is liable to lose soil by the action or encroachment of the water, he should also have the benefit of any land gained by same action. But it seems to us that the rule rests upon a much broader principle, and has a much more important purpose in view, viz., to preserve the fundamental riparian right—on which all others depend, and which often constitutes the principal value of the land—of access to the water.

"The incalculable mischiefs that would follow if a riparian owner is liable to be cut off from access to the water, and another owner sandwiched in between him and it, whenever the water line had been changed by accretions or relictions, are self-evident, and have been frequently animadverted on by the courts. These considerations certainly apply to riparian ownership on lakes as well as on streams. Take the case in hand of our small inland lakes, the waters of many of which are slowly but gradually receding. The owners of lands bordering on them have often bought with reference to access to the water, which usually constitutes an important element in the value and desirability of the land. If the rule contended for by the appellants is to prevail, it would simply open the door for prowling speculators to step in and acquire title from the State to any relictions produced in the course of time by the recession of the water, and thus deprive the owner of the original shore estate of all riparian rights, including that of access to the water. The endless litigation over the location of the original water lines, and the grievous practical injustice to the owner of the original riparian estate that would follow, would, of themselves, be a

sufficient reason for refusing to adopt any such doctrine. That the State would never derive any considerable pecuniary benefit—certainly none that would at all compensate for the attendant evils—we may, in the light of experience, safely assume."

[3] What, then, is the true boundary of such land on the ocean shore in this State? That question is settled by Code, section 3574, which in terms extends the rights of riparian owners of lands on bays, rivers, creeks and shores of the sea to low water mark. The original of that statute appears to have been first enacted in 1679 (2 Hen. Stat. 456), and provided that the fee simple title of the owners of land on "rivers and creeks" should extend to low water mark. *French v. Bankhead*, 11 Gratt. (52 Va.) 136; *Garrison v. Hall*, 75 Va. 159; *Groner v. Foster*, 94 Va. 650, 27 S. E. 493; *Taylor v. Commonwealth*, 102 Va. 761, 47 S. E. 875, 102 Am. St. Rep. 865.

However this line may thus change either for the advantage or disadvantage of the riparian owner, low water mark remains his true boundary under the Virginia statute. The title of the Commonwealth to the public waters likewise shifts with the shifting sands, but that which is lost at one place is sometimes gained at another.

[4] The statute authorizing the assignment of oyster planting grounds in the public waters of this Commonwealth does not permit the assignment of that area which lies between high water mark and low water mark, for the all sufficient reason that the Commonwealth has no title thereto and because it is private property which belongs to the owner of the adjacent highland.

[5] It follows, then, that we agree with the trial court that Steelman, the oyster inspector, had no right to invade this private property to take it from the

appellant, Field, for the purpose of assigning it to Bunting for oyster planting grounds.

[6, 7] 2. For the other contention of appellants, they rely upon their demurrer, in which they contend that the court of equity had no jurisdiction in this case, because it is sought to direct and control the action of the oyster inspector, whose duty requires him to make judicial or *quasi* judicial decisions as the basis of his action or proposed action. For this contention they rely upon *Thurston* v. *Hudgins*, 93 Va. 780, 20 S. E. 966, and *Rowe* v. *Drisgell*, 100 Va. 137, 40 S. E. 609. These cases do not support this contention. What they do hold is that an oyster inspector, in the act of making assignments in the public waters which he is vested with power to assign, has to exercise his judgment to some extent, and for that reason errors which he may make in the exercise of his function cannot be corrected by mandamus. They do not hold that he cannot be restrained by injunction from assigning or attempting to assign lands, the title of which is not in the Commonwealth, and which are not within the public waters. Such a public official is an agent of the State with his powers delegated and defined by the statute, so that he can only act when and as authorized by the statute. If he exceeds his powers, he becomes a mere trespasser and may be enjoined. *Commission of Fisheries* v. *Oyster Co.*, 109 Va. 565, 64 S. E. 1041; *State Highway Commission* v. *Nock*, 138 Va. 214, 120 S. E. 869.

In *Coleman* v. *Claytor*, 93 Va. 20, 24 S. E. 463, however, an oyster inspector was restrained from making an illegal assignment of oyster grounds to one clearly not entitled to them, and required to assign them to the claimant who was entitled to such assignment.

The decree of the trial court is plainly right.

*Affirmed.*