# Richmond

TOWN OF LEESBURG, A MUNICIPAL CORPORATION v. H. ASHTON TAVENNER.

June 21, 1954.

Record No. 4192.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Stilson H. Hall* and *Lucas D. Phillips*, for the appellant.

*Jack E. Russell* and *Paul V. Rogers*, for the appellee.

MILLER, J., delivered the opinion of the court.

H. Ashton Tavenner instituted this suit in equity against the town of Leesburg to test the validity of an ordinance enacted by the town council on the 14th of April, 1952.

The ordinance is set out in the bill of complaint, and its pertinent parts follow:

"(1)   That no motor or other vehicle shall be parked on Market Street within a distance of 100 feet of either side of King Street except that motor vehicles operated as common carriers of passengers, while discharging or receiving passengers, shall be permitted to park in the space on the North side of Market Street beginning 20 feet from the West line of King Street and extending Westwardly for a distance of 80 feet and other motor vehicles shall be permitted to park on the North side of Market Street while loading or unloading freight or merchandise in the said space beginning 20 feet from the West line of King Street and extending Westwardly for a distance of 80 feet when such use does not interfere with or prevent the parking therein of motor vehicles operated as common carriers of passengers as hereinbefore authorized, and that motor vehicles operated as common carriers of passengers, while discharging or receiving passengers, shall be permitted to park in the space on the South side of Market Street, beginning 20 feet from the East line of King Street and extending Eastwardly for a distance of 80 feet.

"(2)   That all parking meters on the pavements abutting on Market Street within 100 feet of either side of King Street shall be removed.

"(3)   That all motor or other vehicles using the parking spaces herein permitted shall be parked parallel to the curb with the right wheels not more than 10 inches therefrom. * * *"

Violation of the ordinance is made a misdemeanor punishable by fine.

Market street, which is the same as state route 7 within the town of Leesburg, extends in an easterly and westerly direction, and King street, which is U. S. route 15 within

the town, extends in a northerly and southerly direction. Tavenner is the lessee for a term of years of a building near the corner of Market and King streets, in which he conducts a mercantile business. It is situated on the north side of Market street, slightly west of King street and is directly north of and adjacent to the 80-foot area in which common carriers of passengers are permitted to park for the purpose of loading and unloading passengers.

In the bill Tavenner charged that enactment of the ordinance was beyond the powers of the municipality, and that the ordinance itself was unreasonable, discriminatory, and void. He prayed for a permanent injunction against the town restraining it from enforcing the ordinance.

The town filed a written "motion to dismiss" in which it asserted that the ordinance was valid, and moved the court to deny the relief prayed for and to dismiss the bill. This motion, which was treated as a demurrer, was overruled. No other pleading was tendered, nor was any evidence presented. The court proceeded to adjudicate the rights of the parties, declared the ordinance null and void, and permanently restrained appellant from enforcing it.

The municipality asserts that its council had authority to enact the ordinance under powers granted in its charter (Acts 1936, ch. 408, p. 763), and bestowed upon cities and towns by § 46-259, Code of 1950.

Among the powers granted the council in the town's charter are the following:

"* * * to regulate the use of all such highways, parks, streets, alleys, parkways and public grounds * * *." "* * * To exercise full police powers; * * *;" "* * * To do all things whatsoever necessary, expedient or lawful for promoting or maintaining the general welfare, comfort, education, morals, peace, government, health, trade, commerce, or industries of the town or its inhabitants. * * *" (Acts 1936, *supra*, at pages 765, 767, 768.)

The pertinent parts of § 46-259, *supra*, follow:

"The council or other governing body of any city or town may, by a general ordinance, provide for the regulation of parking within its limits, * * * determine the time during which a vehicle may be parked * * *, including specifically the right and authority to classify vehicles with reference to parking and to designate the time, place and manner such vehicles may be allowed to park on city or town streets; * * *."

It is clear from the above quoted provisions of the town charter and the general law that the town of Leesburg has been granted the right to enact reasonable legislation covering the control of its streets and their use by vehicular traffic. That is in keeping with the general law and policy obtaining in this country. 25 Am. Jur., Highways, § 255, p. 548; 37 Am. Jur., Motor Transportation, § 21, p. 534.

That the State may, in the exercise of its police power, delegate to a municipality control in whole or in part over its streets and vehicular traffic thereon is not open to question.

"There are certain propositions of law applicable to the instant case that are either admitted or so well settled as not to require the citation of authority. Among these are the following: * * *that the State may delegate to a city the exercise of so much of its police power within its limits as it may see fit; that the streets of a city are public highways of the State; that the State may exercise such control over them as to it seems proper; that this control may be exercised either directly, or delegated to the city; and that this delegation may be either in whole or in part, and conditionally or unconditionally." *Richmond, Fredericksburg and Potomac R. R. Co.* v. *City of Richmond,* 145 Va. 225, 246, 133 S. E. 800.

The ordinance here challenged was enacted under the police power delegated to the town by the legislature, and it is for the public benefit. It gives all common carriers of passengers operating within the town the same rights and privileges. It also allows other motor vehicles to park in the

specified area while loading and unloading merchandise if such activity does not interfere with use of the area by a common carrier of passengers. These classifications are natural, reasonable and appropriate to the purposes sought to be accomplished. The fact that the classifications are objectionable to one who conducts a private enterprise and may cause him inconvenience and incidental loss does not render the ordinance unreasonable and discriminatory.

"While conceding the correctness of the proposition that an abutter has an easement in the public roads which amounts to a property right, we are of the opinion that the exercise of this right is subordinate to the right of the municipality, derived by legislative authority, to so control the use of the streets as to promote the safety, comfort, health and general welfare of the public." *Wood* v. *City of Richmond*, 148 Va. 400, 407, 138 S. E. 560.

"The legislature may, in the exercise of the police power, restrict personal property rights in the interest of public health, public safety, and for the promotion of the general welfare. * * *" *Gorieb* v. *Fox, et al.*, 145 Va. 554, 560, 134 S. E. 914.

To sustain his position Tavenner relies chiefly upon the decision of *Gates* v. *City Council of Bloomfield*, 243 Iowa 1, 13, 50 N. W. (2d) 578, wherein it is said:

"Our holding that the ordinance was a grant of privilege to the bus companies to devote a portion of the street in front of the plaintiff's property for business use is decisive of the whole case. We need not decide what the effect would be if a city were empowered by statute to grant such a right. Under all authorities a city has no implied right to grant to individuals the right to use the streets for business purposes. * * *

"* * * Whether abutting property owners can be made to submit to all the added inconvenience and damages arising from the location of interurban bus stations in front of their property, by a state statute, we need not decide. It is enough for the purposes of this case to say that a city is

without implied power to grant an interurban bus company the right to use the street fronting another's property for a place to stop to load and unload passengers, baggage, and freight."

It is sufficient answer to say that the opinion in that case shows no grant of power to the municipality, either in its charter or by general law, to enact the ordinance. Here by grant from the legislature in its charter and by general law, the express power to regulate and control the parking and movement of vehicular traffic has been bestowed upon the municipality. The ordinance is not discriminatory within the class to which the parking privileges are granted for it gives the same rights to all common carriers. The fact that specific zones are designated on a public street for the loading and unloading of passengers by common carriers does not render the ordinance unreasonable or discriminatory as to owners of property or private enterprises adjacent to such areas. The time limit fixed for the common carriers to park for such purpose is reasonable, and the permitted use is in the interest of the public.

We conclude that the ordinance is valid, which necessarily results in a reversal of the decree and dismissal of the bill of complaint.

*Reversed and final decree.*