## Richmond

RICHMOND FUNERAL DIRECTORS' ASSOCIATION, ET AL. v. W. L. GROTH, DIRECTOR, ETC.

June 12, 1961.

Record No. 5305.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Jack N. Herod; Gordon W. Poindexter, Jr.; Bowles, Boyd & Herod,* on brief, for the petitioners.

*J. E. Drinard, City Attorney,* on brief, for the respondent.

CARRICO, J., delivered the opinion of the court.

On February 27, 1961, the Richmond Funeral Directors' Association and the Richmond Funeral Directors' Association, Inc., hereinafter referred to as petitioners, filed in this court an original petition for a writ of mandamus against W. L. Groth, Director of Public Safety of the City of Richmond, hereinafter referred to as respondent, after having served on him proper notice of the intended application and a copy of the petition. On the same date, respondent filed his answer to the petition.

The petition and answer present the following case for our consideration:

The petitioners are funeral directors engaged in conducting funerals from private homes, churches and funeral parlors in the city of Richmond.

On February 27, 1956, the city council of Richmond adopted an ordinance, § 22-136, City Code, (now § 22-149, City Code) directing the respondent to promulgate rules and regulations restricting the parking of vehicles on the highways of the city "at places where funerals are conducted."

On March 1, 1956, the respondent promulgated rules and regulations to carry out the directive contained in the ordinance.

On October 22, 1959, one E. W. McMinn was tried before the Hustings Court of the City of Richmond on a charge of violating the ordinance by parking his automobile in a zone set aside for a funeral to be conducted at a funeral parlor of one of the petitioners. In acquitting Mr. McMinn, the judge of the Hustings Court, in a written opinion, ruled that the ordinance was unconstitutional.

As a result of this ruling, the respondent immediately withdrew the rules and regulations that had been promulgated pursuant to the ordinance and refused to comply with the provisions of the ordinance. He notified the petitioners that, because of the court's ruling, the rules and regulations could not be enforced.

On December 7, 1959, petitioners filed a petition in the Hustings Court of the City of Richmond, Part II, seeking a declaratory judgment that the ordinance was constitutional. The respondent filed an answer to the petition, and joined in the prayer of the petition that the ordinance be declared constitutional.

On February 19, 1960, the judge of the Hustings Court, Part II, in a written opinion, ruled that the ordinance was valid and constitutional.

Notwithstanding this latter ruling, the respondent refused to rein-

state the rules and regulations, or to promulgate new ones, to carry out the provisions of the ordinance.

The petition now before us prays that the ordinance be declared valid and constitutional; that a writ of mandamus issue compelling the respondent to reinstate the rules and regulations previously promulgated, or to promulgate other rules and regulations; that the respondent be ordered otherwise to comply with the provisions of the ordinance, and that he be required to enforce the ordinance and reasonable rules and regulations promulgated pursuant thereto.

In his answer to the petition, the respondent admits all of the allegations of fact set forth in the petition, and states that he does not dispute the jurisdiction of this court to hear and dispose of this matter. He prays that the ordinance be adjudged valid and constitutional, and states that he will abide by the decision of this court.

The sole question to be determined in this case is whether the ordinance is valid and constitutional.

The ordinance was adopted by the city pursuant to the provisions of the city charter, § 2.01 and 2.04, Acts of Assembly, 1948, c. 116, and the provisions of § 46-259, Code of Virginia, 1950, as amended, (now Code, § 46.1-252).

The provisions of the city charter grant to the city the power to conduct its government so as to promote the general welfare of the city and the safety, health, peace, good order, comfort, convenience and morals of its inhabitants. Among the powers granted, the city is specifically authorized to regulate, by ordinance, the operation of motor vehicles and to exercise control over traffic in the streets of the city, provided that such regulation and control are not inconsistent with the state Motor Vehicle Code.

Code, § 46.1-252, authorizes the city council, by general ordinance, to provide for the regulation of parking within its limits, and to grant to specified administrative officials the right and authority to put such regulations into effect, including the right to classify vehicles with reference to parking and to designate the time, place and manner such vehicles may be allowed to park on city streets. The section further permits the council to delegate to the proper administrative officials the authority to make and enforce such additional regulations as parking conditions may require.

The ordinance adopted by the city council reads as follows:

"In order to alleviate hazardous traffic conditions incident to the conduct of funerals, to provide a means for the orderly interment of

the dead, and to preserve the safety, peace, good order, comfort, convenience and welfare of the inhabitants of the city, the director shall by appropriate rules and regulations restrict the parking or stopping of vehicles on the highways at places where funerals are conducted. Such rules and regulations shall designate the areas in the highways where such restrictions shall apply, and shall prescribe the time when such restrictions shall be in effect. The director shall cause appropriate signs to be placed in such areas, which shall be of such character as to readily inform an ordinarily observant person of the existence of such rules and regulations. It shall be unlawful for any person to violate such rules and regulations, and upon conviction thereof, shall be punished by section 22-48 of this Code."

It is fundamental that streets and highways belong to the public. Subject only to the limitation that constitutional rights must not be invaded, supreme control over the streets and highways is vested in the state, which, acting under its police power and through the legislature, may prescribe reasonable restrictions and regulations for their use. *Norfolk & Portsmouth Tract. Co.* v. *Norfolk*, 115 Va. 169, 177, 78 S. E. 545, 547; *Ferguson* v. *Board of Supervisors*, 133 Va. 561, 566, 113 S. E. 860, 861.

This power of the state over streets and highways may lawfully be delegated to local governing bodies, and when so delegated, may be exercised by such bodies to the full extent of the power conferred. *City of Lynchburg* v. *Peters*, 145 Va. 1, 9, 10, 133 S. E. 674, 677.

The provisions of the city charter, §§ 2.01 and 2.04, and Code, § 46.1-252, are grants by the legislature to the city of the police power of the state, and permit the city to enact such reasonable reglulations pursuant thereto as will promote the public health, welfare, safety and morals of its inhabitants.

Every presumption is in favor of the validity and reasonableness of municipal ordinances. *Nat. Linen Service Corp.* v. *Norfolk*, 196 Va. 277, 279, 83 S. E. 2d 401, 403; *Housing Authority* v. *Denton*, 198 Va. 171, 177, 93 S. E. 2d 288, 293; 13 Mich. Jur., Municipal Corporations, § 65, p. 438; 37 Am. Jur., Municipal Corporations, § 177, pp. 810, 811, 812.

While no objection has been raised before us as to the validity and reasonableness of the ordinance under consideration, it would be well to note that the usual attack made upon such enactments is that they deprive abutting property owners of the privilege to park in

front of, or nearby, their own property. This objection is answered by our holding in *Town of Leesburg* v. *Tavenner*, 196 Va. 80, 84, 82 S. E. 2d 597, 600, where we said:

" 'While conceding the correctness of the proposition that an abutter has an easement in the public roads which amounts to a property right, we are of the opinion that the exercise of this right is subordinate to the right of the municipality, derived by legislative authority, to so control the use of the streets as to promote the safety, comfort, health and general welfare of the public.' *Wood* v. *City of Richmond*, 148 Va. 400, 407, 138 S. E. 560, 562."

The general public is vitally concerned with the matters involved in the ordinance under consideration. Without proper regulations, the solemnity normally to be expected at funerals would be lost, the safety of those attending the funeral would be jeopardized, and the use of the streets by others would be seriously impaired by the attendant traffic congestion.

It is immaterial that property owners might be temporarily deprived of their privilege to park, or that those conducting and attending funerals might be benefitted. These effects are merely incidental to a valid exercise of police power by the municipality.

■ Another attack usually made upon such ordinances is that they vest discretionary power in the hands of administrative officials without prescribing definite standards as a guide for their enforcement. Recognizing that courts should be alert, in determining the validity of such ordinances, to see that proper standards are provided, we find that the ordinance in question amply meets the tests we have laid down in our decisions. *Taylor* v. *Smith*, 140 Va. 217, 231, 232, 124 S. E. 259, 263; *Thompson* v. *Smith*, 155 Va. 367, 379, 380, 154 S. E. 579, 584; *Southern Railway* v. *Com.*, 159 Va. 779, 795, 167 S. E. 578, 583; *Ours Properties, Inc.* v. *Ley*, 198 Va. 848, 852, 853, 96 S. E. 2d 754, 757, 758.

We hold the ordinance to be valid and constitutional. It states that its purposes are to alleviate hazardous traffic conditions incident to the conduct of funerals, to provide a means for the orderly interment of the dead, and to preserve the safety, peace, good order, comfort, convenience and welfare of the inhabitants of the city. The purposes of the ordinance are all endowed with a public interest, the ends sought to be achieved are all promotive of the public good, and as long as the regulations promulgated thereunder are reasonable, the city has then validly used the power vested in it.

 Under the ordinance, the respondent is vested with discretion as to what shall be contained in the rules and regulations to be promulgated by him. Since mandamus does not lie to direct the manner in which the respondent should exercise his discretion, we cannot control the contents of the rules and regulations. *Richmond-Greyhound Lines* v. *Davis*, 200 Va. 147, 152, 104 S. E. 2d 813, 816, 817.

However, under the ordinance, the respondent has no discretion as to whether or not he shall promulgate the rules and regulations in the first instance. The ordinance is clear, its mandate is plain, he "shall by appropriate rules and regulations restrict parking" where funerals are conducted. He has failed to carry out this mandate. Mandamus is proper to compel him to perform his duty, without controlling the manner in which he exercises his discretion. *Eubank* v. *Boughton*, 98 Va. 499, 500, 501, 36 S. E. 529, 530; *Richmond-Greyhound Lines* v. *Davis, supra*, 200 Va., at page 152; 12 Mich. Jur., Mandamus, § 14, p. 357; 34 Am. Jur., Mandamus, § 67, pp. 855, 856.

In accordance with the views expressed herein, a writ of mandamus will issue directing the respondent to perform the duties imposed upon him by the ordinance. To the extent indicated,

*Mandamus awarded.*