## Richmond

CEDRIC HARTON SANDIFORD V. COMMONWEALTH OF VIRGINIA.

June 11, 1976.

Record No. 751173.

Present, All the Justices.

*James E. Ghee*, for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

Indicted for possession of a sawed-off shotgun for an offensive or aggressive purpose in violation of Code § 18.1-268.3 (Cum. Supp. 1975), Cedric Harton Sandiford was found guilty by a jury which fixed his punishment at 10 years in the penitentiary. The trial court entered judgment on the verdict on June 5, 1975.

■ Code § 18.1-268.4 (Cum. Supp. 1975), in effect at the time of trial, read in pertinent part as follows:

". . . Possession or use of a 'sawed-off' shotgun shall be presumed to be for an offensive or aggressive purpose:

. . . .

"(2) When the 'sawed-off' shotgun is in the possession of, or used by, an unnaturalized foreign-born person, or a person who has been convicted of a crime of violence in any court of record, state or federal, of the United States of America, its territories or insular possessions;

". . . or

"(4) When the 'sawed-off' shotgun is found in the possession of an individual under circumstances indicating his preparation to participate in a riot or civil disturbance or his preparation for the commission of a crime of violence."

To prove an offensive or aggressive purpose, the Commonwealth relied upon and the jury was instructed upon two of these presumptions, *viz.*, the presumption arising from possession of a sawed-off shotgun in circumstances indicating preparation to commit a crime of violence, and the presumption arising from foreign birth and alienage.* The jury did not assign the ground upon which it based its verdict. The dispositive question on appeal is whether the latter presumption offends the due process and equal protection clauses of the Fourteenth Amendment. Sandiford, "an unnaturalized foreign-born person", a veteran of service in the United States Army, and insofar as the record shows, a lawfully admitted resident alien, had proper standing to raise the question and properly preserved the point below.

"[T]he term 'person' [as used in the Fourteenth Amendment] . . . encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside. . . . "[C]lassifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny." (Footnotes omitted). *Graham* v. *Richardson*, 403 U.S. 365, 371-72 (1971).

---

* Title 18.1 was repealed effective October 1, 1975. In the recodification of Code § 18.1-268.4, Code § 18.2-302 (Repl. Vol. 1975) omits the presumption arising from foreign birth and alienage.

*See also In re Griffiths,* 413 U.S. 717 (1973); *Sugarman* v. *Dougall,* 413 U.S. 634 (1973).

When the classification is suspect, the State "bears a heavy burden of justification." *McLaughlin* v. *Florida,* 379 U.S. 184, 196 (1964). To justify a suspect classification, the State must show that it is necessary to the achievement of a vital state interest. Such interest must be more than "legitimate"; it must be "important", *Dunn* v. *Blumstein,* 405 U.S. 330, 343 (1972); "compelling", *Graham* v. *Richardson,* 403 U.S. at 375; or "overriding", *McLaughlin* v. *Florida, supra.*

■ The Commonwealth says that the interest to be achieved here is "the public peace, safety and security." It argues that "the possession of dangerous instrumentalities by persons who owe no allegiance to the established government . . . pose[s] a potential danger to the peaceful maintenance of that government . . . in time of war or conflict". The Supreme Court has never decided "whether special circumstances, such as armed hostilities between the United States and the country of which an alien is a citizen, would justify the use of a classification based on alienage." *In re Griffiths,* 413 U.S. at 722, fn. 11 (1973). While it may be an open question whether armed hostilities *in esse* would justify a classification based on alienage, we are of opinion that the mere possibility of future armed hostilities with some nation in the world community does not justify the use of a classification based generally upon foreign birth and alienage.

Due process requires that, for a statutory presumption to be valid, "there must be some rational connection between the fact proved and the ultimate fact to be established." *Burnette* v. *Commonwealth,* 194 Va. 785, 790, 75 S.E.2d 482, 485 (1953). *See also Leary* v. *United States,* 395 U.S. 6, 32-36 (1969); *Sharp* v. *Commonwealth,* 213 Va. 269, 271, 192 S.E.2d 217, 219 (1972). Here, the fact proved is that Sandiford is "an unnaturalized foreign-born person" found in possession of a sawed-off shotgun. The ultimate fact to be established is that the possession was "for an offensive or aggressive purpose". We see no rational connection between a person's place of birth and his disposition to commit offensive or aggressive acts. Nor do we understand how the removal of his alienage by the process of naturalization would change such disposition if it existed.

Mere possession of a sawed-off shotgun by a citizen (natural or naturalized) raises no presumption of an unlawful purpose, *see Riley* v. *Commonwealth,* 213 Va. 273, 191 S.E.2d 727 (1972), and we hold that, insofar as Code § 18.1-268.4(2) created such a presump-

tion based upon mere possession by an unnaturalized foreign-born person, it denied Sandiford equal protection and due process of law.

The Commonwealth contends that the evidence was sufficient to prove circumstances indicating Sandiford's "preparation for the commission of a crime of violence" but concedes that if the presumption based upon foreign birth and alienage is constitutionally infirm, "the verdict of the jury. . . will have to be set aside since the jury could have found the defendant guilty under two different presumptions". We agree. *Riley* v. *Commonwealth, supra,* 213 Va. at 277, 191 S.E.2d at 730; *accord, Ford* v. *Commonwealth,* 215 Va. 308, 317, 208 S.E.2d 921, 927 (1974). Accordingly, the judgment is reversed and the case is remanded for a new trial.

*Reversed and remanded.*