# Richmond

## COUNTY BOARD OF ARLINGTON COUNTY, ET AL. V. RUDOLPH A. RICHARDS, ET AL.

January 14, 1977.

Record No. 760056.

Present, Carrico, Harrison, Cochran, Harman, Poff and Compton, JJ.

*Charles G. Flinn*, Deputy County Attorney (*Jerry K. Emrich*, County Attorney, on briefs), for appellants.

*Herbert C. Harper* (*Ray Elbert Parker*, pro se, on brief), for appellees.

*Amicus Curiae:* Arlington Chamber of Commerce (*Charles McDonnell Radigan; Barham, Radigan, Suiters & Brown*, on brief), for appellants.

Poff, J., delivered the opinion of the court.

Appellants [1] challenge the trial court's judgment declaring a county ordinance authorizing permit parking on certain public streets unconstitutional as applied to appellees.[2]

On May 18, 1974, County Board of Arlington County amended and reenacted § 29 D of its zoning ordinance. The preamble stated the legislative purpose to be:

". . . to reduce hazardous traffic conditions resulting from the use of streets within areas zoned for residential uses for the parking of vehicles by persons using districts zoned for commercial or industrial uses or the Conditional Uses allowed in Special Districts under the Zoning Ordinance of Arlington County; to protect those districts from polluted air, excessive noise, and trash and refuse caused by the entry of such vehicles; to protect the residents of those districts from unreasonable burdens in gaining access to their residences; to preserve the character of those districts as residential districts; to promote efficiency in the maintenance of those streets in a clean and safe condition; to preserve the value of the property in those districts; and to preserve the safety of children and other pedestrians and traffic safety, and the peace, good order, comfort, convenience and welfare of the inhabitants of the County."

The county manager was empowered to implement § 29 D (hereinafter, the ordinance) in those residential areas in which he determined that "on the weekdays of any month" 75% of street parking capacity was filled and more than 25% of capacity was being occupied by "operators of vehicles . . . using districts in which commercial or industrial uses are permitted". In such residential areas, parking privileges were restricted to "service or delivery vehicles" and vehicles displaying permits. Parking permits were to be issued to "persons who are residents" of a restricted zone for "every vehicle owned by those persons and

---

[1] County Board of Arlington County, Bert W. Johnson, County Manager of Arlington County, and Roy McLaren, Chief of Police of Arlington County.

[2] Rudolph A. Richards, Mario A. Carboni, Frank Tomek, Thomas Beck, Braxton H. Tabb, Jr., Michelle McKenzie, Elmer P. Borkowski, Ernest G. Wallace, Joseph F. Belfiore, Jr., Carolyn Bolling, Howard E. Hurley, Jr., James Mott, H. D. Morris, George A. Riscili and Ray Elbert Parker.

registered in the County"; "persons who are visitors of any residents"; and "persons who do business with any residents" Parking violations were declared unlawful.

Aurora Highlands, a residential community consisting largely of single-family homes, is located along State Route 1 opposite "Crystal City", a complex of high rise office and commercial buildings where 20,000 workers are employed. Based upon an engineering study, the county manager designated a portion of Aurora Highlands as a permit parking zone. The zone embraced 81 buildings containing 101 residences and 192 parking spaces along portions of three streets. All but two of the single-family homes had off-street parking facilities.

Appellees were employed in Crystal City. Most commuted to work by automobile and parked on streets in Aurora Highlands. When the permit zone was established, they filed two motions against appellants seeking a declaratory judgment that the ordinance, as applied to them, denied them due process of law and equal protection of the laws, and praying for an injunction against its enforcement. The two motions were consolidated for trial, and the trial court, sitting without a jury, heard evidence *ore tenus.*

By final order entered September 16, 1975, incorporating a letter opinion dated June 18, 1975, the trial court found that the classification bears no "reasonable relationship to the stated objectives", ruled that "the classification . . . is arbitrary and unreasonable", and declared that "the application of the ordinance to the petitioners is found to be violative" of their rights to due process and equal protection of the laws. The trial court decreed that appellants be "enjoined permanently from enforcing the provisions of . . . [the ordinance] against the petitioners".[3]

On brief, appellants posed the question: "Is the ordinance as it is applied to the appellees who are denied permits, a denial of due process . . . or . . . equal protection . . .?" At bar, however, both parties agreed that the effect of the final order was to declare the classification arbitrary and the ordinance

---

[3] In the court below, the Board of Supervisors of Prince William County filed a brief *amicus curiae* in support of appellees but did not appear on appeal. Arlington Chamber of Commerce moved this Court for leave to file a brief *amicus curiae* in support of appellants, and we granted the motion.

unconstitutional on its face, and we will consider the question in that posture.

We find it unnecessary to address arguments concerning "special" legislation proscribed by Article IV, § 14 of the Constitution of Virginia, or those related to the due process and privileges and immunities clauses of the Constitution of the United States, for we are of opinion that this ordinance offends the equal protection clause of the 14th Amendment.

The 14th Amendment does not forbid classification in legislative enactments. Rather, it commands that classification be reasonably structured to serve a proper governmental interest. Classifications based upon race, national origin, and alienage are suspect and subject to strict judicial scrutiny, and survive equal protection attacks only when designed to achieve an "important", "overriding", or "compelling" governmental interest. *Sandiford* v. *Commonwealth*, 217 Va. 117, 225 S.E.2d 409 (1976). When the basis is not suspect, the classification is constitutionally permissible if the governmental objective is "legitimate" and the classification bears a "reasonable" or "substantial" relation thereto. This is true even when the basis of the classification involves First Amendment guarantees. *Young, Mayor of Detroit* v. *American Mini Theatres, Inc.*, 427 U.S. 50 (1976); *see also McWhorter* v. *Commonwealth*, 191 Va. 857, 63 S.E.2d 20 (1951).

The ordinance creates two classes, and we must first decide what they are. Appellants say they are two classes of vehicles. Some appellees view them as a government-employee class and a non-government-employee class. One appellee treats them on brief as a property-owner class and a non-property-owner class. In our view, the ordinance creates one class consisting of residents of a defined zone who own automobiles registered in the county and persons who are visitors of or do business with such residents, and another class consisting of all other persons.

Hence, it appears from the face of the ordinance that the crucial basis of the classification is residence in a selected area. Classifications in municipal ordinances enjoy a presumption of validity, but that presumption may be "overcome by unreasonableness apparent on the face of the ordinance". *Kisley* v. *City of Falls Church*, 212 Va. 693, 697, 187 S.E.2d 168, 171 (1972). Clearly, the objectives stated here constitute a legitimate

governmental interest. The question, then, is whether the classification bears a reasonable relation to those objectives.

Defending the ordinance, appellants cite two Virginia cases and several cases in other jurisdictions upholding ordinances regulating parking on public streets. *Town of Leesburg* v. *Tavenner,* 196 Va. 80, 82 S.E.2d 597 (1954) (parking zone restricted to all but common carriers and commercial vehicles); *Funeral Directors' Ass'n* v. *Groth,* 202 Va. 792, 120 S.E.2d 467 (1961) (parking forbidden during funerals); *Akron* v. *Davies,* 111 Ohio App. 103, 170 N.E.2d 494 (1959) (street parking around public buildings limited to public vehicles); *Commonwealth* v. *Sargent,* 330 Mass. 690, 117 N.E.2d 154 (1953) (parking by legislators permitted in no-parking zones).

We do not find the Virginia cases controlling or the other cases helpful. In each, the classification was sustained, but in none was the classification based upon residence. Nor is the decision in *State* v. *Rush,* 324 A.2d 748 (Maine 1974) relevant to our determination of the validity of the classification here, for there the ordinance prohibiting overnight parking treated motorists as a single class.

In response to appellees' argument that the objectives of the ordinance could be better achieved by other parking regulations applied to motorists as a single class, appellants say that they are not required to select the optimum solution to a public problem. It is true that a legislative body is not required to choose "the least restrictive alternative" except when "state action impinges on the exercise of fundamental constitutional rights or liberties", *San Antonio Independent School District* v. *Rodriguez,* 411 U.S. 1, 51 (1973), but it is never free to adopt an alternative so restrictive that it violates rights secured by the equal protection clause.

Appellants rely, in part, upon general authority delegated to local governments under the zoning statutes. They argue that "many of the goals of Article 8, Chapter 11 of Title 15.1 are more effectively promoted by the parking regulation than by some other use regulation." Whatever authority local governments may derive from the zoning statutes to protect the distinctive characteristics of residential neighborhoods, such authority does not include the power to adopt ordinances which grant residents a parking monopoly in the public streets of their neighborhood.

An owner of property abutting a public street has the right of ingress and egress and "the right to use the street as one of the public". *Nusbaum* v. *Norfolk*, 151 Va. 801, 805, 145 S.E. 257, 259 (1928). But ownership of such property gives the owner no right to the use of the street superior to that enjoyed by the public at large.

> "The right to park in a public street is not a right incident to the ownership of abutting land but rather one which is incident to the use of the street for travel and which is shared by the property owner in common with all other members of the traveling public." *Brown* v. *Jackson*, 268 Or. 111, 113, 519 P.2d 87, 88 (1974).

*Cf. Town of Leesburg* v. *Tavenner, supra,* 196 Va. at 85, 82 S.E.2d at 600, where we held that "[t]he fact that specific zones are designated on a public street for the loading and unloading of passengers by common carriers does not render the ordinance unreasonable or discriminatory as to owners of property or private enterprises adjacent to such areas." *See also* 7 Am. Jur.2d *Automobiles and Highway Traffic* § 240 (1963).

Necessarily, the parking privileges of residents are no greater than those of property owners. Nor is a resident's privilege inferior to that of the public at large.[4] The classification at bar cannot, therefore, be sustained on the theory that it protects different rights or privileges of the classes it creates.

The court in *State* v. *Whisman*, 24 Ohio Misc. 59, 263 N.E.2d 411 (1970) considered an equal protection challenge to a permit parking ordinance much like the one at bar. There, upon a finding that "an extreme parking problem exists for the residents of" two streets in New Boston, the ordinance provided that parking be prohibited within a designated zone except by permit. A city official was instructed to issue permits to "bona fide residents" of the zone "who own or operate a motor vehicle" and, on a space-available basis, to "residents of the City of New Boston". Delivery vehicles "loading and unloading" in the zone were exempt, and "limited permits" were authorized "for visitors to the homes" located in the zone. The ordinance fixed a fine for parking violations.

---

[4.] In *Kaufman* v. *West*, 133 Wash. 192, 233 P. 321 (1925), the court invalidated as discriminatory an ordinance which prohibited owners, occupants, visitors, and employees of an apartment house from parking across the street adjacent to the building.

Unlike the classification before us, the classification in *Whisman* did not grant the parking privilege to residents of the restricted zone to the exclusion of other residents of New Boston. Yet, the court found that "it absolutely discriminates against all persons who are not residents of New Boston", that "no valid justification for the classification exists", and that the ordinance "merely grants a parking right to residents in contravention of the well established rights of the general public." *Id.*, 24 Ohio Misc. at 65, 263 N.E.2d at 415.

Local governments have a legitimate interest in regulating the cause of the manifold problems which result from parking congestion. But the cause of such problems is the use of public streets by motorists in general, wherever they live or work. A regulation which treats the cause by favoring motorists who happen to reside along a public street at the expense of those who live elsewhere may relieve the problems, but solutions achieved that the price of invidious discrimination are too dear.

We agree with the trial court that the classification created by this ordinance bears no reasonable relation to its stated objectives, and we hold that the ordinance on its face offends the equal protection guarantee of the 14th Amendment.

We do not condemn all permit parking ordinances. The one at bar was not enacted under authority of Code § 46.1-252.01 (Repl. Vol. 1974). That statute empowers local governing bodies "to provide for the issuance of permits for motor vehicles parking on public streets" and to set the "rates" and fix the "term[s]" of such permits. In setting permit "rates", local governments are authorized to "differentiate" between two classes of motor vehicles, *viz.*, "motor vehicles upon which a license fee is paid to the political subdivision issuing such permit and other motor vehicles." Significantly, the statute does not allow local governments to deny permits to nonresidents.

Code § 46.1-252.01 is not in issue here, and we express no opinion upon its validity or the validity of an ordinance enacted pursuant thereto. Our decision affects only parking permit ordinances, such as that here, which create classifications not reasonably related to legitimate governmental objectives.

*Affirmed.*