## CIRCUIT COURT OF WARREN COUNTY

Front Royal
and Warren County
Industrial Park Corp.

v.

Town of Front Royal
and Town Council
of the Town of Front Royal

October 23, 1992

Case No. (Chancery) 92–121

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Petition for Mandamus of the Petitioners for extension of sewer service to their property pursuant to an annexation order of December 31, 1978, prayer for damages, and their affirmative assertion of *res judicata* based upon earlier litigation between the parties in federal court and on the Defendants' Demurrer and Pleas of Laches, Immunity, and the Statute of Limitations. Upon consideration of the argument of the parties, the Court makes the following findings of fact and conclusions of law.

## I. *Findings of Fact*

The following facts are established in the record and are not in dispute.

In 1973 and 1974, the Front Royal and Warren County Industrial Park Corporation (the Industrial Park Corporation) acquired 86 acres of industrial land in Warren County, Virginia. In December, 1978, the Industrial Park Corporation together with owners of adjacent property subdivided their land into a 22 lot subdivision (Industrial Park) with each lot containing 5 acres or more. The Industrial Park Corporation owns lots 1 through 16 in the Industrial Park.

On December 31, 1978, 595.8 acres, which included the property owned by the Industrial Park Corporation, was annexed into the Town of Front Royal, and the annexation court ordered the construction of specific interceptor and collector sanitary sewer lines. The annexation court order specifically provided as follows:

> Sewer Facilities: The Town of Front Royal shall proceed to construct interceptor and *collector* sanitary sewer lines in the areas herein decreed to be annexed and shall construct two pumping stations therein in accordance with the testimony of engineer expert witness, Massie, one to be located in the area annexed belonging to the original petitioners, and the other to be located on the area annexed belonging to R. Alton Morrison, as soon as they become reasonably necessary and it becomes economically feasible so to do to serve the residents of the annexed area or any industrial concerns which locate therein, but said improvements, including the two pumping stations referred to above, shall be completed within five years from the effective date of annexation. (Emphasis added.)

Decree of Annexation dated December 31, 1978. (Exhibit 1)

Since its annexation, the Industrial Park Corporation has requested that the Town extend sewer lines to each of its 16 lots on its property.

In 1983, the Town contracted with Gilbert W. Clifford & Associates, a Winchester based engineering firm, to design a sewer system for the annexed area in question. The Clifford & Associates design called for a pump station to be installed on lot 14 of its property and for lines to be installed to permit the entire property to be served by gravity lines. The plan called for a sewer line to run across lots 11, 12, 14, 15 and 16.

In 1983, the annexation court reconvened upon the motion of the Industrial Park Corporation to consider its petition for an injunction ordering the Town of Front Royal to construct sewer lines to serve its property. The annexation court ordered the construction of sewer lines in accordance with the Town's revised plans of May, 1984 (the Clifford & Associates Plan) and ordered that those lines be constructed by December 27, 1985. Annexation Court Proceedings, December 13, 1984 (ruling announced from bench by the Honorable Norman K. Moon, Chief Judge) (Exhibit 2). The annexation court expressly ruled that *"the Town's revised plans of May, 1984, are in substantial compliance with the Court's Order." Id.* The Town constructed those lines, completing them prior to December 27, 1985. However, the lines constructed do not provide sewer facilities to each one of the Petitioner's platted lots.

Incident to its December 13, 1983, ruling, the following colloquy took place between the annexation court and counsel for the Industrial Park (Transcript, Hearing 12/13/83, pp. 118–119):

> Mr. Robert Janney: As I understand it, generally, they will be required to provide the service to each one of these lots, the petitioners, as it becomes available and the application process is complied with?

> Judge Moon: That is what we [the Annexation Court] have envisioned, and it is pretty clear in the order, the original order. That doesn't need to be spelled out now. That was the original order.

> Mr. Robert Janney: I just want it on the record, Your Honor.

Further on in the same hearing, Judge Davis presciently stated: "Let's have a transcript made of this proceeding and filed with the papers so we won't . . . so whoever will have to go through the same thing as we did." *Id.* at p. 121.

The Industrial Park Corporation continues to demand that the Town extend individual sewer lines to each of its 16 five-acre lots.

This case is a successor to the civil rights action brought by the Industrial Park Corporation in federal court on February 12, 1987. In that case, the plaintiff claimed that the Town violated the 1978 Annexation Court Order by failing to extend individual sewer lines to each of the sixteen lots it owned. In response to the plaintiff's factual allegations, the defendants denied that they violated the Annexation Court Orders. The defendants asserted then and continue to assert

that the Town is in full compliance with the requirements of the Annexation Court Orders.

In addition to the factual defense, the defendants filed multiple motions to dismiss in the federal court, which included motions to dismiss on the grounds that the individual defendants should be afforded protection by the doctrines of absolute legislative immunity and good faith qualified immunity. The district court granted the plaintiff's motion to strike the affirmative defenses, including the absolute legislative immunity defense. The individual defendants named in the federal lawsuit then filed an interlocutory appeal of the district court ruling on the question of absolute legislative immunity to the Fourth Circuit, which affirmed the district court ruling in an opinion and ruling issued on January 9, 1989. *Industrial Park Corp., et al. v. Town of Front Royal, Va.*, 865 F.2d 77 (4th Cir. 1989) (Front Royal I) (Exhibit 5). Following district court proceedings, the United States Court of Appeals for the Fourth Circuit decided that this was an appropriate case for it to exercise its discretionary power to abstain. *Industrial Park Corp., et al. v. Town of Front Royal, Va.*, 945 F.2d 760 (4th Cir. 1991) *cert. denied* 112 S. Ct. 1477 (1992) (Front Royal II) (Exhibit 6). The petitioners then sought a Writ of Certiorari from the Supreme Court of the United States, which petition was denied. *Industrial Park Corp., et al. v. Town of Front Royal, Va.*, 112 S. Ct. 1477 (1992).

The petitioners now claim that the rulings made incident to the initial interlocutory appeal to the Fourth Circuit denying the legislative immunity defense are binding on the Town.

## II. *Conclusions of Law*

### *Demurrer*

In considering a demurrer, the court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988).

### *Accrual of Complainant's Cause of Action for Damages*

Section 8.01–230 of the Code of Virginia provides that a cause of action for injury or damage to property accrues, and the prescribed limitation period shall begin to run from the date the injury or dam-

age occurs. In this case, the Annexation Court issued an Order on December 31, 1978, giving the Town five years within which to construct certain sewer improvements on the annexed property. When the Annexation Court was reconvened on the petition of the Industrial Park Corporation, it extended the Town's deadline for construction of the sewer improvements until December 27, 1985. As such, any cause of action that may exist as a consequence of the Town's alleged failure to construct the required sewer lines accrued on December 27, 1985.

### Statute of Limitations

In *Hampton Roads Sanitation District v. McDonnell*, 234 Va. 235, 238–39 (1987), the Virginia Supreme Court indicated that a landowner may enforce his right to compensation under Article 1, Section 11, of the Constitution of Virginia in a common-law action for injury to property. The Virginia Supreme Court then noted that property damage actions such as the one before it are governed by the provisions of Virginia Code § 8.01–243(B), which provides that "every action for injury to property . . . should be brought within five years next after the cause of action shall have accrued." *Id.* at 239.

### Section 8.01–229(E)(2) Tolls the Statute of Limitations Because of the Earlier Litigation Between the Parties in Federal Court

Section 8.01–229(E) of the Virginia Code provides for the tolling of the statute of limitations in cases in which a suit has been instituted but has been dismissed, abated or nonsuited. Section 8.01–229(E)(3) provides for the tolling of the statute of limitations in the event of a nonsuit, and that section has been construed to include the dismissal of an action in federal court pursuant to Rule 41 of the Federal Rules of Civil Procedure. *Scoggins v. Douglas*, 760 F.2d 535, 538 (4th Cir. 1985). Presumably, the same policy would apply to § 8.01–229(E)(2), which provides for tolling in the event that "a judgment or decree is rendered for the plaintiff in any action commenced within the prescribed limitation period, and such judgment or decree is arrested or reversed upon a ground which does not preclude *a new action for the same cause.*" (Emphasis added.)

The statute of limitations was tolled in this case by the earlier litigation between the parties. The revisers' note to subsection 8.01–229(E)(2) states that "the plaintiff who brings his action within due time should not be denied a decision on the merits because of subsequent procedural developments or fortuities which have no bearing

upon the purpose of statutes of limitation." In applying the principles of tolling and determining the application of the statute of limitations to a subsequent case between the same partes, the Virginia Supreme Court has held that in order for the statute to be interrupted, "the cause of action in the two cases must be substantially identical." *Brunswick Corp. v. Perkinson*, 153 Va. 603, 611 (1930).

To understand the application of the tolling provisions of § 8.01–229(E)(2), it is necessary to have an understanding of the precise meaning of the term "cause of action," because that is the broad transactional concept underlying the application of the tolling statute. The Supreme Court of Virginia recently had occasion to discuss the concept of cause of action in *Trout v. Commonwealth Transp. Commissioner*, 241 Va. 69, 73, 400 S.E.2d 172 (1991):

> An "action" and a "cause of action" are quite different. "Action" is defined by Code § 8.01–2, as noted above. We define "cause of action" in *Roller v. Basic Construction Co.*, 238 Va. 321, 327, 384 S.E.2d 323, 326 (1989), as "a set of operative facts which, under the substantive law, may give rise to a right of action."

As can be seen, Virginia follows the broad transactional rule set forth in the Restatement of Judgments 2d, § 24, for purposes of defining "cause of action." The importance of understanding the broad concept of "cause of action" is essential to understanding the application of the tolling provisions of the statute. One "cause of action" may give rise to myriad rights of action, e.g., breach of contract, breach of warranty, negligence, and statutory claims such as asserted in the earlier litigation between the parties in this case; however, if the rights of action arise from the same operative set of facts and could legally be asserted therein, they are all the same "cause of action" for purposes of the application of the tolling provisions of the statute.

## Laches

Laches is the neglect or omission to assert a right for an unreasonable and unexplained length of time, under circumstances that are prejudicial to an adverse party. *McNeir v. McNeir*, 178 Va. 285 (1941); *Finkel Outdoor Products, Inc. v. Bell*, 205 Va. 927 (1965). One important factor in determining whether or not the doctrine of laches will operate as a bar to an action is the statute of limitation because it is well established that "equity follows the law" as to

applicable periods of limitations. *U.S. v. Lomas Mortg., USA Inc.*, 742 F. Supp. 936, 939 (W.D. Va. 1990). Since the statute of limitations in this case was tolled, the Petitioner's claim is not barred by laches.

*The Earlier Litigation Between the Parties in Federal Court Has No Collateral Estoppel or Res Judicata Effect on This Litigation*

A decree or order does not constitute *res judicata* unless it is a final judgment in the case on the merits. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Steinman v. Clinchfield Coal Corp.*, 121 Va. 611, 619 (1917). Similarly, there must be a valid and final judgment for the doctrine of collateral estoppel to apply. *See, Lake Serv. Co. v. Board of Supervisors*, 233 Va. 111, 114 (1987). In this case, the United States Court of Appeals for the Fourth Circuit vacated the district court's orders granting summary judgment and damages in favor of the plaintiffs. *Front Royal II*, 945 F.2d at 765. Therefore, the only final judgment on the merits was vacated. Where a decree has been reversed or annulled, it no longer operates as *res judicata*. *Pittston Co. v. O'Hara*, 191 Va. 886, 902, *appeal dismissed*, 342 U.S. 803 (1951).

Here, the petitioner is asking that the Court give preclusive effect to the Fourth Circuit's affirmance on interlocutory appeal of the district court's order striking the Town's defense of absolute immunity. In particular, the plaintiff in Paragraph 11 of its Petition for Writ of Mandamus suggests that this Court should give preclusive effect to the Fourth Circuit's determination that the Town was provided no discretion with regard to the annexation order. Even though the district court's interlocutory order striking the Town's defense of absolute immunity was immediately appealable as an exception to the final judgment rule, *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982), an interlocutory order is by definition not a final judgment on the merits. *Abney v. United States*, 431 U.S. 651, 658–59 (1977). An interlocutory order merely resolves an issue collateral to the merits of the action. *Id.* Because the interlocutory order striking the Town's defense of absolute immunity was not a final judgment on the merits, it fails to satisfy the requirements for *res judicata* or collateral estoppel. Therefore, the doctrines of *res judicata* and collateral estoppel do not preclude the courts of Virginia from re-examining all of the issues addressed by the Fourth Circuit during the interlocutory proceeding.

The interlocutory order not only has no *res judicata* effect, it also cannot serve as the "law of the case." Where there are two appeals in the same case, for the purpose of that case, though only for that case, the decision on the first appeal is the "law of the case" and bars both the trial court and the appellate court from re-examining anything decided in the first appeal. *Steinman v. Clinchfield Coal Corp.*, 121 Va. 611, 620 (1917). Unlike *res judicata*, the doctrine of "law of the case" does not depend upon the finality of the first judgment. *Id.* Where there are two appeals in the same case, "[t]he first judgment is generally, if not universally, not final." *Id.*

In *Steinman*, a case similar to the case at bar, the plaintiff originally brought an action in federal district court. On appeal, the Fourth Circuit reversed the trial court's decision in favor of the plaintiff and remanded the case to the district court for a new trial. The plaintiff suffered a nonsuit in the district court and brought an action in Virginia state court. The defendant argued that the plaintiff was precluded from relitigating the issues decided by the Fourth Circuit. Because there had been no final judgment in the case, the Virginia Supreme Court held that *res judicata* did not apply. The Court then considered whether the doctrine of "law of the case" barred relitigation of the issues in state court. While the "law of the case" may have had a preclusive effect in subsequent litigation in the federal courts, it did not prevent relitigation of the issues in the courts of Virginia. *Id.* at 623. "If the litigation in another jurisdiction is not ended and the opinion or judgment stops short of the dignity of *res judicata*, no reason is perceived why it should be binding in the courts of this Commonwealth." *Id.* at 623. Therefore, in this case, the prior orders and decrees of the federal courts are not the "law of the case" with respect to the proceedings in the courts of Virginia.

However, it would appear that the December 13, 1984, rulings of the Annexation Court are *res judicata* as to certain issues raised in this case, and, if either party intends to make a collateral attack upon those rulings, it will be necessary to reconvene the Annexation Court. Virginia Code § 15.1–1047.2.

*If the Town Failed to Comply with the Annexation Order, It Is Not Protected by the Doctrines of Legislative or Sovereign Immunity*

While it is well established that local legislators enjoy absolute immunity from suit for decisions made in their capacity as legislators, *Scott v. Greenville County*, 716 F.2d 1409, 1422–23 (4th Cir. 1983); *Bruce v. Riddle*, 631 F.2d 272, 279 (4th Cir. 1980); *City of*

*Norfolk v. Hall*, 175 Va. 545 (1940) (immunity applies to adoption of defective street plan); *Stansbury v. Richmond*, 116 Va. 205 (1914) (immunity applies to action for failure to provide the public with municipal water and sewer services), it is equally clear that a municipal corporation is liable for acts of its employees or officials if the acts were done in the exercise of a ministerial act. *City of Richmond v. Grizzard*, 205 Va. 298 (1964); *Howlett v. City of South Norfolk*, 193 Va. 564, 69 S.E.2d 346 (1952) (construction of authorized public works is a ministerial activity); *Burson v. Bristol*, 176 Va. 53 (1940). Where a wrongful act causing injury is committed by officers or employees of a municipality in the performance of a purely ministerial act, the municipal corporation is liable just as any other private corporation. *Hoggard v. Richmond*, 172 Va. 145, 157 (1939).

The language in the December 31, 1978, Annexation Order is clear and unambiguous: "The Town of Front Royal shall proceed to construct interceptor and collector sanitary sewer lines in the areas herein decreed to be annexed . . . ." Arguably, there may be some disagreement as to the precise meaning of "collector sanitary sewer lines"; however, that issue was resolved by the colloquy between the Annexation Court and counsel for the Industrial Park on December 13, 1983. The sanitary service is to be provided to "each one of these lots . . . as it becomes available and the application process is complied with." Transcript, Hearing 12/13/83, p. 118–119. The December 31, 1978, Annexation Decree required the Town to provide sewer service to each of the Plaintiff's lot upon compliance with the Town's application procedure, and, upon its so doing, the Town must provide the sewer to each of the lots; it has no discretion to do otherwise. Whether the petitioner complied with the application process of the Town remains to be proven.

*Mandamus May Be Appropriate in This Case*

Virginia Code § 15.1–1048 expressly provides that mandamus "shall lie" to enforce the provisions of the chapter on annexation. The Supreme Court of Virginia discussed the basic requirements for the issuance of a writ of mandamus in *R. F. & P. R.R. Co. v. Fugate*, 206 Va. 159, 162, 142 S.E.2d 546 (1965):

> We have frequently stated the basic essentials for the issuance of a writ of mandamus in this jurisdiction. As was said in *Richmond-Greyhound Lines v. Davis*, 200 Va. 147, 151, 104 S.E.2d 813, 816, "A writ of mandamus is an extraordi-

nary remedial process, which is not awarded as a matter of right but in the exercise of a sound judicial discretion. Due to the drastic character of the writ, the law has placed safeguards around it. Consideration should be had for the urgency which prompts an exercise of the discretion, the interests of the public and third persons, the results which would follow upon a refusal of the writ, as well as the promotion of substantial justice. In doubtful cases, the writ will be denied, but *where the right involved and the duty sought to be enforced are clear and certain and where there is no other available specific and adequate remedy, the writ will issue* . . . .

In that case, we quoted with approval 55 C.J.S., *Mandamus*, § 51, pp. 87, 88, where it is said: "Before the writ may properly issue, at least three elements must co-exist: (1) The existence of a clear right in plaintiff or the relator to the relief sought . . . . (2) The existence of a legal duty on the part of respondent or defendant to do the thing which the relator seeks to compel . . . . (3) *The absence of another adequate remedy at law* . . . . and, although the co-existence of these elements, standing alone, will not always suffice to justify the issuance of the writ, in the discretion of the court . . . . the absence of either of these elements will make the issuance of the writ invalid." 200 Va. at 152, 104 S.E.2d at 817. *See also, Gilliam v. Harris, State Highway Commissioner*, 203 Va. 316, 318, 124 S.E.2d 188, 189, 190, and authorities there collected. (Emphasis added.)

*Accord, Gannon v. S.C.C.*, 243 Va. 480, 416 S.E.2d 446 (1992).

In *Richland Medical Assoc. v. Commonwealth*, 230 Va. 384, 386–387, 337 S.E.2d 737 (1985), the Supreme Court stated:

Mandamus is an extraordinary remedy employed to compel a public official to perform a purely ministerial duty imposed upon him by law. *Richmond-Greyhound Lines v. Davis*, 200 Va. 147, 152, 104 S.E.2d 813, 816 (1958). A ministerial act is "one which a person performs in a given state of facts and prescribed manner in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done." *Dovel v. Bertram*, 184 Va. 19, 22, 34 S.E.2d 369, 370 (1945).

When a public official is vested with discretion or judgment, his actions are not subject to review by mandamus. *Id.* As we stated in *Thurston v. Hudgins*, 93 Va. 780, 20 S.E. 966 (1895):

"[I]t is well settled that mandamus will not lie to compel the performance of any act or duty necessarily calling for the exercise of judgment and discretion on the part of the official charged with its performance . . . .

"[W]here the official duty in question involves the necessity on the part of the officer of making some investigation, and of examining evidence and forming his judgment thereon," mandamus will not lie. 93 Va. at 783, 20 S.E. at 967–68 (citations omitted).

The function of a trial court in a mandamus proceeding is to "command and execute and not to inquire and adjudicate." *Railroad Co. v. Fugate*, 206 Va. 159, 164, 142 S.E.2d 546, 550 (1965). Indeed, a trial court exceeds its function and usurps the authority granted to a public official when it undertakes in a mandamus proceeding to review the discretion of the official. *Broaddus v. Supervisors*, 99 Va. 370, 372, 38 S.E. 177, 178 (1901).

One of the marked characteristics of a proceeding by mandamus is that if the functionary whose conduct is complained of is by law to exercise any discretion, that discretion will not be controlled by a writ of mandamus; for that would be to transfer the discretion which the law commits to the functionary to the court which undertakes to award the writ. Id. at 372, 38 S.E. at 177–78; *see, Funeral Directors' Ass'n v. Groth*, 202 Va. 792, 797, 120 S.E.2d 467, 471 (1961) (mandamus will not lie to control manner in which public official exercises discretion).

If the town's application process has been properly followed, mandamus is an appropriate avenue for the Industrial Park Corporation to use in seeking to compel the construction of sewer lines to each of its sixteen lots.

As noted above, the absence of another adequate remedy at law is one of the requirements for the issuance of a writ of mandamus. It is instructive to note that monetary relief may be available in other similar actions, including declaratory judgment actions and constitutional "taking" cases. The Virginia Declaratory Judgment Act ex-

pressly provides for the award of "further relief" in declaratory judgment actions. Va. Code § 8.01–186. Furthermore, the Virginia Supreme Court has recognized and approved common law damage actions to enforce the due process rights found in the Virginia Constitution. *See, Groves v. Cox*, 559 F. Supp. 772 (E.D. Va. 1983); *Burns v. Board of Supervisors of Fairfax County*, 118 Va. 625, 627 (1977); *Morris v. Elizabeth River Tunnel District*, 203 Va. 196, 198 (1962). The Virginia Supreme Court has also expressly recognized and approved the award of monetary damages in inverse condemnation actions instituted by aggrieved property owners. *See, e.g., Sheffield v. Department of Highways and Transportation*, 240 Va. 332, 336 (1990); *Hampton Roads Sanitation District v. McDonnell*, 234 Va. 235, 238 (1987); *Chaffinch v. C.&P. Telephone Company*, 227 Va. 68, 70 (1984). Mandamus is the public counterpart of a suit for specific performance, and it is clear that "ancillary to its authority to decree specific performance, a court of equity may award damages for breach on contract . . . ." *Grubb v. Starkey*, 90 Va. 831, 834, 20 S.E. 784 (1894). Therefore, the petitioners may join their prayer for monetary relief with their petition for a writ of mandamus. Therefore, the demurrer should be denied as it applies to the Petitioner's claim for damages proximately caused by delay in construction of the sewer lines.

*Given the Present Style of the Case, the Front Royal Town Council Has Not Been Properly Made A Party Defendant*

A writ of mandamus is a command issued by a court of competent jurisdiction that can be directed to a municipal corporation or public official requiring the performance of a particular duty. In the case of public officials, the duty must result from the official station of the party to whom the writ is directed or from the operation of law. *See, Kaplan v. Block*, 183 Va. 327 (1944); *Board of Supervisors v. Combs*, 160 Va. 487 (1933); *Wise v. Bigger*, 79 Va. 269 (1884). It is well settled that mandamus is the proper remedy to compel public officers, including municipal counsels, to perform the ministerial duties, but that it will not lie to control or review the acts of public officers and municipal counsels in matters in which they have been vested with discretionary authority. *Andrews*, 201 Va. at 415.

In *Dew v. Judges*, 13 Va. (3 Hen. & M.) 1 (1808), the Virginia Supreme Court considered a similar question. There, the court held that an individual official should have been made a party to a mandamus action, so as to enable the official to defend the action before

mandamus issued. In *Dew*, the Supreme Court avoided the issue, however, by holding that it appeared from the record that the individual official was apprised of the proceedings and did defend his right, as such, the results of the proceeding would not be disturbed.

The Virginia Code provides that a town may be made a party defendant by service of process upon its mayor as was done in this case. Virginia Code § 8.01–300. The individual members of the Town Council were not named and have not been served. In this case only, the municipal corporation, the Town of Front Royal, Virginia, is a party defendant, neither the Town Council collectively or as individuals are parties to this suit. As a practical matter, this is an academic point because, if the Petitioners are successful, it is the Town Council which will implement the action necessary to comply with the Court's Order. Municipal corporations, like all corporations, act through their officers and agents.

*The Plaintiff May Not Recover Its Attorney's Fees from the Defendant*

In Count II of its petition for writ of mandamus, the Industrial Park Corporation asks for relief including the award of attorney's fees. Virginia law clearly prohibits the award of attorney's fees in an action unless they are clearly provided for in a contract or by statute. *East Texas Salvage v. Duncan*, 226 Va. 160 (1983); *Kemp v. Miller*, 166 Va. 661 (1936). "At common law, no costs were allowed in mandamus, but the right thereto . . . depends upon the statute." 52 Am. Jur. 2d *Mandamus* § 499. The statutory provisions governing the issuance of the extraordinary writ of mandamus make no provision for the award of attorney's fees. Va. Code §§ 8.01–644 through 8.01–653.1. No authority exists which would permit the plaintiff to recover its attorney's fees from the defendant in this action.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. Defendants' Demurrer to the prayer for mandamus and claim for damages for delay in construction is denied;

2. Defendants' Demurrer to the prayer for attorney's fees is sustained;

3. Defendants' Plea of Immunity is denied;

4. Defendants' Plea of the Statute of Limitations and Laches is denied; and

5. Petitioner's affirmative assertion of *res judicata* based on the federal court litigation between the parties is denied.